Robert and Linda ENGSTROM, Appellants,

v.

BAYER CORPORATION, Appellee.

Pamela Pearson and Bob Pearson

v.

Bayer Corporation.

Appeal of Pamela Pearson.

Larry Hunter and Mary Ellen Hunter, H/W Appellant,

v.

Bayer Corporation, Appellee.

Barbara Thorpe and Jerry Thorpe, H/W Appellant,

v.

Bayer Corporation, Appellee.

Patricia Ann Weiding, Appellant,

v.

Bayer Corporation, Appellee.

Superior Court of Pennsylvania.

Argued May 5, 2004.
Filed June 14, 2004.
Reargument Denied Aug. 27, 2004.

---

**2.** It is ironic that the basis for the claim of taint is suggestive interviewing, yet the solution to the problem is another round of questioning which may extend to the incident itself, including cross-examination, which is questioning that, by definition, suggests answers.

Arnold Levin, Philadelphia, for appellants (at 3322 and 3344).

Michael Coren, Cherry Hill, NJ, for appellants (at 3337 and 3338).

Albert G. Bixler, Philadelphia, for appellees.

Before: STEVENS, BENDER and MONTEMURO *, JJ.

## OPINION BY MONTEMURO, J.:

¶ 1 These consolidated appeals lie from orders dismissing with prejudice on the basis of *forum non conveniens* five complaints against Appellee pharmaceutical company in a mass tort[1]/products liability action. The claim is advanced by Appellants that their ingestion of certain of Appellee's products, specifically Alka–Seltzer Plus, containing the decongestant ingredient phenylpropanolamine (PPA) caused them to suffer hemorrhagic stroke resulting in permanent and profound physical damage.

¶ 2 Appellants in this matter are citizens of Missouri, Washington state, Arizona and Hawaii; none has ever resided in Pennsylvania. In no case did the purchase of the medication containing PPA, or the onset, diagnosis or treatment of any Appellant's illness occur in Pennsylvania. No providers of medical service, medical records or their custodians are located in Pennsylvania. None of the witnesses material to demonstration of Appellants' damage claims reside in Pennsylvania.

¶ 3 Appellee is an Indiana corporation with corporate headquarters near Pittsburgh. The medication was developed and produced by a division of the corporation which, until 1995, was located in Indiana, and thereafter situated in New Jersey. No documents or employees/prospective witnesses material to this litigation are located in Pennsylvania, except one former employee.

¶ 4 These actions were commenced in August of 2001, and July and November of 2002. Discovery included a *Frye*[2] hearing held in July of 2003. In May of 2003, Appellee moved for stay or dismissal under 42 Pa.C.S.A. § 5322(e) (*forum non conveniens*) in each of the cases. After a hearing, the trial court granted Appellee's motion, dismissing the complaints by order of September 24, 2003. The order included Appellee's stipulation that it would accept service of process in each Appellant's home state, and would not raise the statute of limitations as a defense to the action. After denying Appellants' two joint requests that the order be reconsidered, the trial court granted their motion for consoli-

---

* Retired Justice assigned to Superior Court.

1. The Philadelphia Court of Common Pleas mass tort program, instituted in 1992, established standardized case management procedures and scheduling to address expeditiously the explosion of asbestos litigation which occurred in the 1980's. There have been approximately 24 mass tort matters in the program, and 13 more, comprehending over 7,000 cases, are currently in litigation. The trial court explained that "[a] mass tort generally involves a products liability claim that can result in hundreds, sometimes thousands, of lawsuits, each claiming a separate injury often as the result of the negligence of one or many defendants. Each plaintiff seeks to be compensated separately and in full for the damages suffered, generally unlike class actions." (Trial Ct. Op. at 26). Appellee reports that "the Philadelphia PPA proceeding now includes approximately 291 actions. Of these cases, Bayer is a defendant in 203 cases, of which 186 involve non-resident plaintiffs." (Appellee's Brief at 13–14).

2. *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923), adopted in Pennsylvania by *Commonwealth v. Topa*, 471 Pa. 223, 369 A.2d 1277 (1977), holds that "[a]dmisssibility of [scientific] evidence is dependent on the general acceptance of its validity by those scientists active in the field to which the evidence [belongs]." *Topa, supra* at 1281.

dation, and this appeal followed.[3]

¶ 5 42 Pa.C.S.A. § 5322(e) reads as follows:

Inconvenient forum.—When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just.

¶ 6 Although Appellants have ostensibly presented seven questions for our review, including one with six subsections, in fact, there are but two: whether the trial court applied the appropriate test in granting Appellee's *forum non conveniens* motion, and whether the motion was timely filed. The remaining claims are merely arguments in support of one or the other of these issues.

■ ¶ 7 As this Court has noted in *Cinousis v. Hechinger Department Store*, 406 Pa.Super. 500, 594 A.2d 731 (1991), the standard of review in assessing the propriety of a trial court's refusal to entertain a case on grounds of *forum non conveniens* is abuse of discretion. This standard applies even where jurisdictional requirements are met. *Beatrice Foods Co. v. Proctor and Schwartz, Inc.*, 309 Pa.Super. 351, 455 A.2d 646, 650 (1982). Moreover, "if there is any basis for the trial court's

decision, the decision must stand." *Cinousis, supra* at 732 (citation omitted).

¶ 8 Our Supreme Court has adopted the Comment to Section 117(e) of the Restatement, Second, Conflict of Laws, in enunciating what the trial court is to consider in deciding whether the doctrine of *forum non conveniens* requires dismissal: "[t]he two most important factors look to retention of the case. They are (1) that since it is for the plaintiff to choose the place of suit, his choice of forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed in any event unless an alternative forum is available to the plaintiff." *Plum v. Tampax, Inc.*, 399 Pa. 553, 160 A.2d 549, 553 (1960).

¶ 9 Here, the trial court found that the latter of these two factors is not at issue, as Appellants' home states provide alternative fora.[4] Indeed, the Federal District Court in Seattle, Washington operates a mass tort program similar to that of Philadelphia.

■ ¶ 10 To determine whether such "weighty reasons" exist as would overcome the plaintiff's choice of forum, the trial court must examine both the private and public interest factors involved. *Petty v. Suburban General Hospital*, 363 Pa.Super.

3. During this period Appellants' two attempts to appeal to this Court were quashed, and their petition to the Pennsylvania Supreme Court for exercise of King's Bench powers was denied.

4. Appellants argue that alternatives are not readily available, contending that "[t]he Orders [appealed from] do not allow Appellants to refile their cases in any state other than the state where each resides." (Appellants' Brief at 14). They assert, in support, that one of their number has attempted, unsuccessfully, to refile in New Jersey, having had her action dismissed on Appellee's motion for violation of the statute of limitations. (Appellants' Reply Brief at 6). We are referred to the Repro-

duced Record for documentation of these events.

We would point out first, that the language of the dismissal order contains no such restriction. Even if it did, the home state does provide a forum; there is no reason provided by Appellants as to why multiples are regarded as necessary. Second, it appears from the reference to a Federal Rule of Civil Procedure that the filing of the New Jersey complaint and its dismissal occurred in federal court; there is no claim that Appellant's home state, Arizona, would not be available or desirable as a locus of the action, especially given Appellee's stipulation as to jurisdiction and waiver of the limitations period.

277, 525 A.2d 1230, 1232 (1987) (citations omitted). The *Petty* Court reiterated the considerations germane to a determination of both the plaintiff's private interests and those of the public as defined by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). They are:

the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the actions; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to a fair trial. * * *

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is appropriateness, too, in having the trial * * * in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Petty, supra* at 1232 (quoting *Gulf Oil, supra* at 508–09, 67 S.Ct. 839).

■ ¶ 11 As our Supreme Court pointed out in *Plum, supra,* "[t]hese two sets of factors are not mutually exclusive but rather supplement each other." *Id.* at 553, 160 A.2d 549. Moreover, this Court in

*Cinousis* aptly observed that "[b]ecause Appellants are not residents of Pennsylvania, the interest of the Commonwealth in providing a forum for its residents to litigate is not implicated." *Cinousis, supra* at 733.

■ ¶ 12 In *Humes v. Eckerd Corp.,* 807 A.2d 290 (Pa.Super.2002), a panel of this Court specifically rejected the notion now being advanced by Appellants, who insist that the weighty reasons test for determining the application of the *forum non conveniens* doctrine requires proof that the forum chosen by the plaintiff is "oppressive and vexatious to the defendant," (Appellants' Brief at 34)[5] and that application of the public and private factors test was error. As already explained, the theory espoused by Appellants is not the standard, while the trial court's analysis here was the correct one under our appellate case law. The trial court found, as noted above in the recitation of facts, that "there is no connection between Pennsylvania and the specific facts of these cases." (Trial Ct. Op. at 17). The trial court's conclusions found determinative in *Cinousis* apply equally to this case:

The plaintiffs are not residents of Pennsylvania. The pertinent events giving rise to the cause of actions occurred outside of Pennsylvania. The relevant medical records of plaintiff's physician after the alleged accident are located outside Pennsylvania. The known witnesses reside outside of Pennsylvania and any additional witnesses will most probably reside outside of Pennsylvania. Finally, the plaintiffs have another more convenient forum available to them.

*Cinousis, supra* at 733.

¶ 13 The court here concluded, after enumerating the burdens imposed by Appellants' choice of forum (Trial Ct. Op. at

---

**5.** We note that this test applies under *Cheeseman v. Lethal Exterminator, Inc.,* 549 Pa. 200, 701 A.2d 156 (1997), to examination of county to county transfers under Pa.R.C.P. 1006(d)(1).

17–19), that "the public interest in efficient judicial administration favors dismissing this action pending and refiling same in the available forum [of Appellants' home states]. There is simply no valid reason that the people of Philadelphia County should bear the burdens of adjudicating th[ese] case[s], including jury duty and the expense of conducting a trial." (Trial Ct. Op. at 20). Further, "[t]rial of th[ese] lawsuit[s] in Philadelphia would also give rise to needless legal complexity," because of the necessity "to engage in a conflict of laws analysis and to apply unfamiliar foreign law." (*Id.*). *See Plum, supra; Farley v. McDonnell Douglas,* 432 Pa.Super. 456, 638 A.2d 1027 (1994). Finally the court noted, relying on *Cinousis, supra,* the enormous burden already faced by the court in the coordinated PPA litigation, "most of which involve[s] out-of-state plaintiffs who chose to file in Philadelphia County for no apparent reason other than the fact that their attorneys have their offices here—a fact of no relevance to a *forum non conveniens* analysis." (Trial Ct. Op. at 21).

¶ 14 Appellants have argued strenuously that the result in this matter is governed by our holding in *D'Alterio v. New Jersey Transit Rail Operations, Inc.,* 2004 Pa.Super. 42, 845 A.2d 850 (2004).[6] There the trial court's *sua sponte* dismissal of the plaintiff's complaint on grounds of *forum non conveniens* was reversed by this Court on grounds that extensive discovery had been already been conducted, indeed, "all pre-trial preparation had been completed, and the parties were scheduled for trial." *Id.* at 7. Moreover, and critically, at no time did [Appellee] object to Appellant's choice of venue or raise the

issue of *forum non conveniens*. Indeed, at the hearing on the rule to show cause, [Appellee] failed to allege that its access to sources of proof or to witnesses would be impeded by trial in Philadelphia. Furthermore, when counsel for Appellant advised the trial court that the sole eyewitness to the accident had agreed to go to Philadelphia to testify, that the doctor's deposition had been videotaped, and that, as a result, there was no inconvenience to Appellant ... the trial court simply responded, "[t]here is an inconvenience to the court system and the taxpayers of the City of Philadelphia and Pennsylvania."

*Id.* at 8 (citations omitted).

¶ 15 Here, despite Appellants' argument that the extensive discovery[7] already conducted justifies the same result as in *D'Alterio,* we cannot agree. Appellee has raised the issue of *forum non conveniens* and the trial court has heard copious argument on the topic. Unlike the cursory examination given the matter by the trial court in *D'Alterio,* here discovery, and its extent, has been thoroughly explored, leading to the court's determination that this factor inures to dismissal of Appellants' complaints. There has been no abuse of discretion as to the weight afforded *D'Alterio.*

¶ 16 Appellants have presented numerous further arguments, asserting, *inter alia,* prejudice caused by Appellee's late filing of its dismissal motion; lack of proper focus by the trial court, on both the economic benefits accruing to Philadelphia from inclusion of foreign litigants in the mass tort program and the court's obligation to monitor the conduct of corpora-

---

6. We note that the *D'Alterio* Court applied the public and private factors test Appellants would have us reject.

7. While insisting that discovery is too far advanced to permit relocation of their cases,

Appellants also somewhat quixotically contend that the court lacks a sufficient record on which to make its decision. We find no merit in either of these claims.

tions doing business within the jurisdiction; the court's mistaken concern with the burden placed on the Philadelphia court system given the propriety of the Commonwealth as a forum; a public policy of providing all litigants with a situs for adjudicating their cases; and contravention of national trends against application of the *forum non conveniens* doctrine. All of these, some appearing in more than one context, are presented as "weighty reasons" justifying denial of the dismissal motion. However, as noted above, jurisprudence in this Commonwealth, as expressed in decisions of the United States Supreme Court, the Pennsylvania Supreme Court and this Court has clearly identified the matters constituting the trial court's most significant concerns. The court herein directed its attention to those matters. Having examined the merits of Appellants' arguments in all their permutations, we find no abuse of discretion in the trial court's conclusion that weighty reasons exist to supercede Appellants' choice of forum.

¶ 17 Appellants' second issue relates to the claim that the amount of completed discovery should have been determinative, that is, because Appellee failed to raise the doctrine of *forum non conveniens* in a timely manner, before discovery efforts were undertaken, it was estopped from doing so. Appellants cite no cases in support of this notion. And, in fact, the doctrine of *forum non conveniens* was included in Appellants' Answer/New Matter responding to the Complaint in each of the five cases. Thus Appellants were put on notice that the issue might be raised. Moreover, as the trial court noted, "the Motion [to Dismiss] was filed on May 23, 2003, (even before the bar date of June 30, 2003 for First Discovery ...); the initial test cases are scheduled for November, 2003 ... and as of June 4, 2003, the depositions of [Appellants] had not yet been taken... They were not completed until August 15, 2003, and others were completed in September 2003." (Trial Ct. Op. at 21). Based on this information, the court properly concluded that the Motion was not untimely filed.

¶ 18 In this same regard, Appellants have argued dismissal would be prejudicial because some discovery, specifically the expert information developed for *Frye* purposes "may be rendered useless or impaired" (Appellants' Brief at 51) because a different test for scientific material might be applicable in the alternative fora. However, *Frye* is more restrictive than its alternative, the *Daubert*[8] test adopted in the federal and some state systems. *See, e.g., Checchio v. Frankford Hospital,* 717 A.2d 1058, 1060 (Pa.Super.1998), *appeal denied,* 566 Pa. 633, 781 A.2d 137 (2001). Therefore any information which would satisfy *Frye* would, *a priori,* satisfy *Daubert.* As a result, neither in that instance nor any other discovery matter would the effort and money already expended in the process of acquiring information be lost.

¶ 19 Order affirmed.

---

8. The less stringent test enunciated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), is embodied in Federal Rule of Evidence 702, which reads as follows:

    If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods to the facts of the case.