Jacqueline **WRIGHT** and Howard Wright, Parents and Natural Guardians of Jared Wright, a Minor Child and in Their Own Right, Appellants,

v.

**AVENTIS PASTEUR, INC.,** Merck & Co., Inc., American Home Products D/B/A Wyeth, Wyeth Laboratories, Wyeth–Aerst, Wyeth–Aerst Laboratories, Wyeth Lederle, Wyeth Lederle Vaccines, and Lederle Laboratories C/O CT Corporation Systems, Eli–Lilly and Company, Bayer Corporation, Johnson & Johnson Consumer Companies, Inc. and Orth–Clinical Diagnostics, Inc., Appellees.

Superior Court of Pennsylvania.

Argued Feb. 15, 2006.

Filed Aug. 2, 2006.

Marc P. Weingarten, Philadelphia, for appellants.

Albert G. Bixler, Philadelphia, for Bayer, appellee.

Jonathan Dryer, Philadelphia, for Aventis, appellee.

Madeline M. Sherry, Philadelphia, for Merck, appellee.

Peter F. Marvin, Philadelphia, for Ortho–Clinical, appellee.

Irene C. Keyes–Walker, Cleveland, OH, for Johnson & Johnson, appellee.

BEFORE: TODD, KLEIN, JJ., and McEWEN, P.J.E.

OPINION BY McEWEN, P.J.E.:

¶ 1 Appellants, Jacqueline and Howard Wright, in their own right, and as parents and natural guardians of Jared Wright, bring this appeal from the order granting the motion of appellees-defendants to dismiss this products liability action on the basis of *forum non conveniens.* We reverse.

¶ 2 Appellants, residents of Texas, instituted this products liability action after their son, minor-appellant, Jared Wright, was diagnosed with severe neurological damage. Appellants allege that Jared's condition was caused by his exposure to high levels of mercury found in the preservative thimerosal, which appellees-manufacturers used in their immune globulin blood products and vaccines.[1] Appellants

---

1. Appellees, Ortho–Clinical Diagnostics, Inc., ("Ortho–Clinical"), Johnson and Johnson

allege that thimerosal is "comprised of almost 50% mercury, a substance known to be highly toxic to humans." Brief of Appellants at p. 6.

¶ 3 The facts underlying Jared's exposure to thimersol are gleaned from the complaint and the parties' briefs. Jared was born in Texas on July 8, 1997. During her pregnancy with Jared, appellant Jacqueline Wright received three injections of thimersol-containing immune globulin blood products because she was Rh negative. All three injections were administered in Texas. Further, Jared received numerous vaccinations during the normal course of his periodic well-baby examinations by his Texas pediatrician. By the time he was 15 months old, Jared had been given 16 thimerosal-containing vaccinations, as well as the measles-mumps-rubella ("MMR") vaccination.[2] Appellants allege that, as a result of Jared's exposure to high levels of mercury contained in thimerosal, in conjunction with the MMR vaccine, he now suffers from Pediatric Developmental Delay—Not Otherwise Specified ("PDD–NOS"), an Autism Spectrum Disorder.

¶ 4 On May 29, 2003, appellants instituted suit in Philadelphia County naming appellees, the manufacturers of various immune globulin products and vaccines, as defendants.[3] An amended complaint was filed in August of 2003, and a second amended complaint was filed in December of 2003. Thereafter, a case management order was issued setting the trial ready date for June 6, 2005.

¶ 5 The litigation proceeded with the filing of answers and new matter by appellees, and the exchange of discovery. On December 23, 2004, appellants petitioned the court for extraordinary relief seeking to extend the deadline for the submission of expert reports an additional 60 days.[4] The request was granted by the trial court in January of 2005, at which time the court also revised the case management order, extending the deadline for the submission of expert reports and pretrial motions until April 7, 2005, and delaying the trial ready date until July 5, 2005.

¶ 6 On April 7, 2005, the last day for the submission of pretrial motions, Merck, Johnson & Johnson, Eli Lilly, and Ortho–Clinical filed motions for summary judgment. That same day, Ortho–Clinical filed a motion to dismiss the second amended complaint, which had been filed sixteen months earlier, on the basis of *forum non conveniens* pursuant to 42 Pa.C.S. § 5322(e), contending that Texas was the more convenient forum for resolution of appellants' claims. On April 27, 2005, twenty days after Ortho–Clinical filed its *forum non conveniens* motion to dismiss, Aventis, Merck, Bayer and Wyeth filed joinders in Ortho–Clinical's motion. Eli Lilly, although not specifically joining in the motion to dismiss, filed a response

Consumer Companies, Inc. ("Johnson & Johnson") and Bayer Corporation ("Bayer"), are the manufacturers of injectable globulin products. Appellees, Merck & Co., Inc. ("Merck"), Aventis Pasteur, Inc. ("Aventis"), and Wyeth Laboratories ("Wyeth"), are the manufacturers of vaccines. Appellee Eli Lilly and Company ("Eli Lilly") is the manufacturer-supplier of thimerosal.

2. Appellants allege in their complaint that the MMR vaccine "administered in conjunction with or after thimerosal-containing vaccines,

could cause serious neurological injuries." Second Amended Complaint, December 9, 2003, at ¶ 60.

3. Although SmithKline Beecham d/b/a GlaxoSmithKline was originally named as a defendant in the action, the case against it was dismissed without prejudice by stipulation of the parties in February of 2004.

4. This motion was opposed by all appellees with the exception of Bayer.

stating that it would consent to jurisdiction in Texas and waive any statute of limitations defense.[5] Appellants filed a motion to strike the joinders, contending that the joinders were filed after the deadline set forth in the case management order and were, thus, untimely. The eminent Judge Sandra Mazer Moss, by order dated May 25, 2005, granted the motion of Ortho–Clinical, and "all defendants' joinder therein," to dismiss appellants' complaint on the grounds of *forum non conveniens*, "without prejudice to [appellants'] right to refile in the appropriate court in Texas." Order dated May 25, 2005, filed May 27, 2005. The court subsequently denied appellants' motion to strike the joinders, and denied as moot appellees' outstanding motions for summary judgment.[6] Shortly thereafter, appellees each filed a stipulation agreeing to (1) accept service of any subsequent action alleging the same injuries and damages filed in Texas, (2) admit personal jurisdiction in Texas for the limited purpose of this litigation, and (3) waive any statute of limitations defense if the subsequent action is filed within one year of the trial court's May 25 Order or within 30 days after the entry of the last order in any appeal.[7] This timely appeal of the order granting appellees' motion to dismiss followed.

¶ 7 The issues raised by appellants before this Court challenge the trial court's decision to dismiss the complaint on the basis of *forum non conveniens*. Specifically, appellants argue:

(1) that Ortho–Clinical failed to demonstrate "weighty reasons" to justify dismissal of the complaint on *forum non conveniens* grounds,

(2) that the motion to dismiss filed by Ortho–Clinical was untimely,

(3) that the joinder motions filed by the remaining appellees-defendants were untimely, and

(4) that appellants' right to refile the complaint should not have been limited only to a court in Texas.[8]

Because we find that the trial court abused its discretion in determining that "weighty reasons" existed to justify dismissal of appellants' complaint based on *forum non conveniens*, we reverse.

■■■ ¶ 8 The doctrine of *forum non conveniens*, codified at 42 Pa.C.S. § 5322(e), permits a trial court to dismiss a case, even where the jurisdictional requirements are met, when the court determines that "in the interest of **substantial justice** the matter should be heard in another forum." 42 Pa.C.S. § 5322(e) (emphasis added).

In deciding whether to dismiss a suit based on *forum non conveniens*, the [trial] court must consider two impor-

---

5. It bears mention that Johnson & Johnson did not file either a joinder in Ortho–Clinical's motion to dismiss or a response to the motion. In a footnote in its Reply Brief filed in support of its motion to dismiss, Ortho–Clinical stated that Johnson & Johnson did not formally join in the motion because it had filed a motion for summary judgment claiming it was a misnamed defendant, which had never manufactured vaccines or immune globulin products. Reply Brief of May 2, 2005, Ortho–Clinical, at p. 2 n. 1. Johnson & Johnson's failure to join in the motion to dismiss is irrelevant, however, considering our disposition of this appeal.

6. Johnson & Johnson's motion for summary judgment, however, was never formally granted or denied by the trial judge.

7. Although these stipulations are not in the certified record, they are included in the reproduced record filed by appellants, and, thus, appellants do not challenge their authenticity.

8. We have reordered and consolidated appellants' issues for purposes of disposition.

tant factors (1) a plaintiff's choice of the place of the suit will not be disturbed except for **weighty reasons,** and (2) no action will be dismissed unless an alternative forum is available to the plaintiff. *Jessop v. ACF Industries, LLC,* 859 A.2d 801, 803 (Pa.Super.2004) (emphasis added) (citations omitted). "Furthermore, a court will ... not dismiss for *forum non conveniens* unless justice **strongly** militates in favor of relegating the plaintiff to another forum." *Poley v. Delmarva Power and Light Co.,* 779 A.2d 544, 546 (Pa.Super.2001) (citation omitted).

¶ 9 In determining whether "weighty reasons" exist to overcome the plaintiff's choice of forum, the trial court is required to examine both the private and public interest factors involved in the case.

> The private factors to be considered include:
>
>> the relative ease of access to sources of proof; availability of compulsory process for attendance for unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.
>
> * * *
>
> With regard to the public factors a court must consider, this Court has recognized that

administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is an appropriateness, too, in having the trial ... in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*D'Alterio v. New Jersey Transit Rail Operations, Inc.,* 845 A.2d 850, 852 (Pa.Super.2004), *quoting Farley v. McDonnell Douglas Truck Serv., Inc.,* 432 Pa.Super. 456, 638 A.2d 1027, 1030 (1994).[9]

¶ 10 Because the determination of whether "substantial justice" dictates a change of forum is within the discretion of the trial court, our review of an order dismissing a case based on *forum non conveniens* is limited to determining whether the trial court abused its discretion. *Farley, supra,* 638 A.2d at 1029. It is with these factors in mind that we consider the trial court's decision in the present case.

¶ 11 The trial judge, in her opinion, after consideration of the public and private factors presented in this case,[10] con-

---

9. It bears mention that this Court has determined that the "oppressive and vexatious" standard set forth by our Supreme Court in *Cheeseman v. Lethal Exterminator, Inc.,* 549 Pa. 200, 701 A.2d 156 (1997), applies only to *intrastate* forum challenges pursuant to Pa. R.C.P. 1006(d)(1), and not to *interstate* challenges pursuant to 42 Pa.C.S. § 5322(e), as that presented here. *Humes v. Eckerd Corp.,* 807 A.2d 290, 295 (Pa.Super.2002).

10. Specifically, with respect to the relevant public factors, the trial judge cited to the

"disadvantages of trying this complex products liability case far from where events occurred," the practical and administrative difficulties of trying cases in congested court centers, and the imposition of jury duty "upon a community which has no interest in the issue." Trial Court Opinion, Mazer Moss, J., August 25, 2005, at p. 3. With regard to the private factors, the trial judge compared the broad facts of this case to those supporting dismissal in *Engstrom v. Bayer Corp.,* 855 A.2d 52 (Pa.Super.2004), *appeal denied sub nom., Weiding v. Bayer Corp.,*

cluded that "the combination of parties' inconvenience and lack of *Philadelphia* ties militates for dismissal."[11] Trial Court Opinion, Mazer Moss, J., August 25, 2005, at p. 4 (emphasis added). Appellants argue, however, that the "crux of this litigation revolves around the decisions made by the product manufacturers [in the greater Philadelphia metropolitan area] to use thimerosal, a substance known to be toxic to humans, as a preservative in their products and to distribute these dangerous products, without adequate warnings, throughout the world ...." Brief of Appellants at p. 25. Indeed, the five counts of negligence listed in appellant's second amended complaint reflect this position. *See:* Plaintiff's Second Amended Complaint, December 9, 2003. Appellants, in both their response to Ortho–Clinical's motion to dismiss and their brief filed in support of this appeal, have detailed relevant corporate actions taken by three of the appellee-defendants which appellants allege occurred in the greater Philadelphia area, specifically:

*Aventis:*

- manufactures all of its pediatric vaccines distributed in the United States at its United States headquarters in Swiftwater, Monroe County, Pennsylvania (100 miles from Philadelphia),

- conducts all clinical trials of the vaccines, as well as surveillance of effectiveness and adverse events from that same facility.

*Merck:*

- manufactures all of its vaccines at its facility in West Point, Montgomery County, Pennsylvania (27 miles from Philadelphia),

- conducts safety reviews, adverse event reporting, and product labeling and warning functions in its facility in Blue Bell, Montgomery County, Pennsylvania (22 miles from Philadelphia).

*Wyeth:*

- maintains its Global Safety Surveillance and Epidemiology group, responsible for monitoring and reporting adverse events and suggesting label changes in Collegeville, Montgomery County, Pennsylvania (30 miles from Philadelphia).

*See:* Exhibits in Support of Plaintiffs' Memorandum of Law Contra Ortho–Clinical Diagnostics, Inc.'s Motion to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens*, April 27, 2005, at Exhibits D–F. Moreover, appellants have listed 21 corporate witnesses from Aventis, Merck and Wyeth who either live or work in the greater Philadelphia area.[12] *See: Id.* at

585 Pa. 690, 887 A.2d 1242 (2005), and in the recent decision of the Court of Common Pleas of Philadelphia County, *Arnelien v. SmithKline Beecham,* 2005 WL 850844 (Pa. Com.Pl.2005), *affirmed,* 895 A.2d 643 (Pa.Super.2006) (unpublished memorandum):

The *Engstrom* Court granted *forum non conveniens* under similar circumstances. The Court held dismissal was proper because plaintiffs were not Pennsylvania residents, the pertinent events occurred outside Pennsylvania, the relevant medical records were located outside Pennsylvania, known witnesses resided outside Pennsylvania and any additional witnesses most probably resided outside of Pennsylvania. Finally, ... plaintiffs had a more convenient forum available.

Trial Court Opinion, *supra,* at p. 4. The trial judge then concluded that "private interests also favor a Texas trial." *Id.*

11. Somewhat paradoxically, the judge noted that appellants could prove corporate conduct took place in counties adjacent to Philadelphia, specifically, Delaware and Chester Counties, a factor that would argue in favor of retaining jurisdiction in Philadelphia as opposed to Texas, which is more than one thousand miles away from those counties. *See:* Trial Court Opinion, *supra,* at p. 3.

12. With regard to Merck, four of the witnesses listed are no longer with the company, two have retired and two work for other pharmaceutical firms. All of them, however, live

Exhibit H. Finally, appellants contend that Pennsylvania is a more convenient forum than Texas for Bayer because its corporate headquarters, where it oversees all of its manufacturing in the United States, is in Pennsylvania, specifically, in Pittsburgh, Allegheny County. Therefore, appellants assert that four of the seven appellees-defendants have significant, relevant corporate connections to Pennsylvania, thereby rendering Philadelphia a viable and convenient forum.

¶ 12 In response, appellee, Ortho–Clinical, contends [13] that since almost all of the

medical care provided to both Jared and his mother occurred in Texas,[14] since all but one of Jared's treating physicians are based in Texas,[15] and since Texas law will likely apply, the decision of the trial judge should be affirmed.

¶ 13 The trial judge, in her opinion, did not discuss the arguments presented by appellants, but focused primarily on the parties' lack of ties to Philadelphia County,[16] and concluded that "the combination of the parties' inconvenience and lack of Philadelphia ties militates for dismissal." [17] Trial Court Opinion, *supra*, at p. 4.

---

in either Philadelphia or a surrounding county, and are, thus, are within the subpoena power of the Philadelphia County Court of Common Pleas. *See:* Exhibits in Support of Plaintiffs' Memorandum of Law Contra Ortho–Clinical Diagnostics, Inc.'s Motion to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens*, April 27, 2005, at Exhibit H.

**13.** Only Ortho–Clinical and Bayer filed briefs addressing the substantive issue of *forum non conveniens*. As the brief filed by Bayer contains similar arguments to those raised by Ortho–Clinical, we will refer to Ortho–Clinical as the leading appellee. Moreover, the remaining defendants—Aventis, Merck, Wyeth, and Eli Lilly—submitted a brief in which they "adopt[ed] and incorporate[d] by reference" the arguments raised by Ortho–Clinical in its brief. Brief of Appellees Aventis, Merck, Wyeth and Eli Lilly at p. 1. The only substantive issue they addressed was whether their joinder motions, filed after the court-mandated deadline for the submission of pretrial motions but within twenty days of Ortho–Clinical's motion to dismiss, was timely. However, since we ultimately conclude that the trial court abused its discretion in dismissing this case, *infra*, we need not address the timeliness of the joinder motions.

**14.** Jared treated with one specialist in Louisiana, and, for a two month period, his mother had prenatal care in Illinois.

**15.** Ortho–Clinical alleges that the testimony of Jared's treating physicians is essential to this case because, in their depositions, "they *all* testified that thimerosal and the [MMR] vaccine did *not* cause Jared Wright's condition."

Brief of Appellee Ortho–Clinical at p. 16 (emphasis in original).

**16.** We acknowledge the apparent trend in recent *forum non conveniens* decisions rendered by this Court toward dismissing cases brought in Pennsylvania where another forum is available. *See: Jessop v. ACF Industries, LLC*, 859 A.2d 801 (Pa.Super.2004) (affirming dismissal of asbestos case in Philadelphia County for refiling in Kansas); *Engstrom v. Bayer Corp., supra*, (affirming dismissals of mass tort PPA cases in Philadelphia County for refiling in plaintiffs' respective home states). *See also: Arnelien v. SmithKline Beecham, supra.* But see: *D'Alterio v. New Jersey Transit Rail Operations, Inc.*, 845 A.2d 850 (Pa.Super.2004) (reversing dismissal of personal injury action when court raised *forum non conveniens sua sponte*, defendant never objected to choice of forum, and sole eyewitness to accident agreed to testify in Philadelphia); *Poley v. Delmarva Power and Light Company*, 779 A.2d 544 (Pa.Super.2001) (reversing dismissal of wrongful death and survival action when forum which trial judge determined to be more convenient, Maryland, was not available since three year period for filing wrongful death actions in Maryland was a condition precedent to maintaining action, rather than a statute of limitations which could have been waived by the parties).

**17.** Significantly, the trial judge did not mention the 21 corporate witnesses listed by appellants who either live or work in southeastern Pennsylvania, including several former and retired employees who cannot be compelled to testify in Texas.

¶ 14 Our analysis of the record, however, compels us to conclude that there is an insufficient basis upon which to find that there are "weighty reasons" to disturb plaintiffs-appellants choice of forum. First, although this case had been in progress for two years in Philadelphia County, the *forum non conveniens* motion to dismiss was not filed until the **last** day for the submission of pretrial motions, and only three months before the scheduled trial date. Thus, all of the relevant documents have been exchanged and all of the relevant witnesses have been deposed.[18] Second, none of the appellees-defendants have corporate headquarters in Texas. Thus, there is no basis upon which to conclude that Texas would be a more convenient forum for appellees' corporate employee witnesses. In fact, Philadelphia County, with its proximity to the relevant corporate offices of four appellees-defendants, appears to be quite a convenient jurisdiction for the trial of the case.

¶ 15 With regard to the public factors, this litigation involves seven pharmaceutical companies that market vaccines and immune globulin products in Pennsylvania. Thus, there is little support for the conclusion that the people of Pennsylvania have no interest in this case, particularly since appellants aver that several of these companies make critical manufacturing and marketing decisions in the Commonwealth. Moreover, while it is unresolved whether the law of Pennsylvania or the law of Texas will ultimately apply to this case, a factor not even considered by the trial judge, there is no basis upon which to conclude that the law determined to be applicable is beyond the ken of a Philadelphia trial judge.

¶ 16 It bears further mention that a review of the recent decisions relied upon by the trial judge, specifically, *Jessop v. ACF Industries, LLC, supra, Engstrom v. Bayer Corp., supra,* and *Arnelien v. SmithKline Beecham,* 2005 WL 850844 (Pa.Com.Pl.2005), *affirmed,* 895 A.2d 643 (Pa.Super.2006) (unpublished memorandum), warrants the conclusion that those cases presented far more compelling factors supporting dismissal than those presented here:

— In *Jessop, supra,* an asbestos tort case, the focus of the litigation was on the plaintiff-decedent's occupational exposure to asbestos and his resulting injuries. Although suit was filed in Philadelphia, the plaintiff and decedent were residents of Kansas, the decedent had worked exclusively in Kansas, and the decedent was diagnosed in Kansas with an asbestos-related disease. While some of the asbestos products at issue were manufactured or assembled in Philadelphia, there was no allegation that key manufacturing or marketing decisions were made here.

— In *Engstrom,* this Court was faced with several mass tort cases filed by out-of-state plaintiffs, who claimed to have suffered strokes after ingesting a cold tablet marketed by defendant, Bayer, containing PPA.[19] While Bayer had its corporate headquarters in Pennsylvania, the medication at issue was developed and produced outside of Pennsylvania, and "[n]o documents or employees/pro-

18. The contention of Ortho–Clinical that Jared's treating physicians and specialists are essential **defense** witnesses on the issue of causation, necessitating their personal appearance, is somewhat disingenuous, as these witnesses have already been deposed, and their testimony is preserved. Moreover, we find it difficult to fathom that these large pharmaceutical firms will not engage separate expert witnesses on this issue.

19. PPA refers to a decongestant ingredient, phenylpropanolamine. *Engstrom v. Bayer Corp., supra,* 855 A.2d at 54

spective witnesses material to this litigation [were] located in Pennsylvania, except one former employee." *Engstrom, supra,* 855 A.2d at 54.

— In *Arnelien,*[20] another PPA case, the plaintiff was a Canadian citizen who suffered a stroke after ingesting a cold tablet marketed by defendant, Smith-Kline Beecham. Significantly, the specific medication, purchased by the plaintiff and ingested in Canada, was marketed *only* in Canada, and was subject to Canadian regulatory laws. Moreover, the trial judge wrote a lengthy opinion, in which he emphasized the importance of the Canadian regulatory process, which was "specific to the marketing of medication in Canada and ... separate and distinct from United States regulatory requirements." *Arnelien, supra,* 2005 WL 850844 at *6.

¶ 17 Finally, there are other factors present here, which, while discussed by both parties on appeal, were not considered by the trial judge, not the least of which is that the discovery process, which encompassed two years, has been substantially completed.[21] Since the law demands that the plaintiff's choice of forum is entitled to great weight,[22] we conclude that the trial court abused its discretion in determining that sufficient "weighty reasons" existed to justify dismissal of appellants'

complaint based on *forum non conveniens.* Consequently, we are compelled to reverse the decision of the trial court.[23]

¶ 18 Order reversed. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

---

**20.** It bears mention that the Philadelphia Court of Common Pleas decision in *Arnelien* cited by the trial judge in her opinion, has no precedential authority in this Court, since, although affirmed by this Court, it was affirmed in a non-precedential unpublished memorandum.

**21.** In two of the cases relied upon by the trial judge, *Jessop, supra,* and *Engstrom, supra,* discovery had *not* been substantially completed at the time the defendants filed motions to dismiss. *See: Jessop, supra,* 859 A.2d at 805; *Engstrom, supra,* 855 A.2d at 58.

**22.** *Jessop, supra,* 859 A.2d at 803.

**23.** Our disposition renders it unnecessary for us to consider appellants' remaining claims (1) that both the motion to dismiss filed by Ortho–Clinical, and the joinders filed by Aventis, Merck, Wyeth, and Eli Lilly were untimely, and (2) that the trial court erred in limiting their right to refile a complaint to a court in Texas.