J-A19039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CLYDE GREEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CSX TRANSPORTATION, INC. | : | |
| | : | |
| Appellant | : | No. 2218 EDA 2020 |

Appeal from the Order Entered August 3, 2020
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 190302966

BEFORE: DUBOW, J., MURRAY, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.: **FILED DECEMBER 21, 2021**

CSX Transportation, Inc. ("CSXT") appeals from the denial of its motion to dismiss pursuant to 42 Pa.C.S.A. § 5322(e) and the doctrine of forum *non conveniens*. On appeal, CSXT contends that the trial court erred in its application of existing *forum non conveniens* precedent. Moreover, CSXT asserts that it proffered sufficient evidence to demonstrate that dismissal predicated on *forum non conveniens* was, contrary to the trial court's determination, the legally correct outcome. Through our thorough review of the record and in looking at the totality of the circumstances as identified by both parties, we find CSXT has satisfied its *forum non conveniens* burden. Accordingly, we reverse and remand.

By way of background, Clyde Green filed a complaint pursuant to the

---

* Retired Senior Judge assigned to the Superior Court.

Federal Employers' Liability Act ("FELA"), *see* 45 U.S.C. § 51 *et seq*., wherein Green alleged that he developed colon cancer through his employment-based exposure to toxic substances. More specifically, Green averred that excessive amounts of asbestos, diesel exhaust/fumes, and second-hand smoke were either causally or contributorily related to the onset of his cancer and that his employer was negligent for not providing him with a reasonably safe working environment.

Green worked for CSXT[1] and its predecessors, the Baltimore and Ohio Railroad and the Chessie System, as a train brakeman and conductor. Green began his employment with CSXT in 1987, but had started working for those prior businesses in 1974.

Green is a lifelong resident of Maryland and had worked for CSXT, as well as its prior entities, almost exclusively in Maryland, too, having had a career that spanned approximately forty-two years. Like Green, many of Green's former coworkers and supervisors maintain residency in Maryland. Moreover, Green's immediate family also lives in Maryland.

Although his primary job sites were in Maryland, on occasion, Green would work out of railyards and terminals in Virginia and Washington, D.C. While under CSXT's employ, Green never worked in Pennsylvania. However, Green, in the 1970s and 80s, infrequently traveled to a singular railyard in Pennsylvania as a result of working for the Baltimore and Ohio Railroad and

---

[1] CSXT is a Virginia corporation that is headquartered in Florida and resultantly keeps its personnel files at that latter location.

the Chessie System. In total, over the course of his entire career, Green worked at thirteen separate railyards.

Green was both diagnosed and exclusively treated for his cancer in Maryland. Every single medical professional that was directly involved in Green's health maintains or operated his or her practice in either Baltimore or Annapolis, Maryland.

Following the filing of Green's complaint, CSXT moved to dismiss predicated on a *forum non conveniens* argument. In its motion, CSXT indicated that, if the complaint were dismissed and refiled in Maryland, it would not object to venue or personal jurisdiction and would consent to utilizing the Pennsylvania filing date of this action for statute-of-limitations purposes, provided that Green timely refiled his complaint.

Ultimately, however, the trial court denied such a request, concluding that it was "no more vexatious to conduct … remote litigation in Maryland or Pennsylvania[,]" Order Denying Defendant's Motion to Dismiss, 8/3/20 (in the context of the COVID-19 pandemic), and further, after CSXT filed a motion to amend the court's order, that CSXT "did not sustain its burden of proving that there were *any* substantially weighty issues to overcome [Green's] chosen forum[.]" Order Denying Defendant's Motion to Amend [the trial] Court's Order, 10/2/20 (emphasis in original).

Thereafter, CSXT petitioned this Court for permission to appeal the trial court's denial of its motion to amend, which was correspondingly granted. As such, this appeal is ripe for adjudication.

CSXT presents three questions for our review, with varying degrees of interrelatedness:

1. Did the trial court apply the wrong legal standard when it denied [its] motion to dismiss for *forum non conveniens* because a trial in Philadelphia would not be "vexatious"?

2. Did the trial court impermissibly suspend the application of the **Plum** factors to [its] motion to dismiss for *forum non conveniens* because of the COVID-19 pandemic?

3. Did [it] satisfy its burden for dismissal under Pennsylvania's generally applicable *forum non conveniens* principles, including as articulated and applied in **Hovatter**, **Wright**, and **Ficarra**?

Appellant's Brief, at 5-6.

To evaluate the discrete issues raised by CSXT, we apply our well-settled standard of review on orders disposing of *forum non conveniens* motions:

> Orders on motions to dismiss under the doctrine of *forum non conveniens* are reviewed for an abuse of discretion. This standard applies even where jurisdictional requirements are met. Moreover, if there is any basis for the trial court's decision, the decision must stand.
>
> An abuse of discretion occurs if, *inter alia*, there was an error of law or the judgment was manifestly unreasonable. When reviewing for errors of law, the appellate standard of review is *de novo* and the scope of review is plenary.
>
> In Pennsylvania, the doctrine of *forum non conveniens*, which originated in Common Law, has been codified by statute:
>
> > **Inconvenient forum.**-When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just.
>
> 42 Pa.C.S.A. § 5322(e).

*Hovatter v. CSX Transportation, Inc.*, 193 A.3d 420, 424 (Pa. Super. 2018) (quotations and citations omitted).

In deciding such a motion, a court must look beyond the principles of jurisdiction and venue to consider whether "litigation in the plaintiff's chosen forum would serve the interests of justice under the particular circumstances." *Alford v. Philadelphia Coca-Cola Bottling Co., Inc.*, 531 A.2d 792, 794 (Pa. Super. 1987). In giving credence to the plaintiff's initial forum choice, however, justice must strongly demonstrate the utility of relegating the plaintiff to another forum. *See Wright v. Aventis Pasteur, Inc.*, 905 A.2d 544, 548 (Pa. Super. 2006). As such, "[t]he two most important factors the trial court must apply when considering whether dismissal is warranted are that 1.) the plaintiff's choice of forum should not be disturbed except for 'weighty reasons,' and 2.) there must be an alternate forum available or the action may not be dismissed." *Robbins for Estate of Robbins v. Consol. Rail Corp*., 212 A.3d 81, 87 (Pa. Super. 2019) (footnote, citation, and quotation marks omitted).

CSXT first asserts that the trial court abused its discretion by relying on the wrong legal standard to deny its motion to dismiss. CSXT believes that the court, *inter alia*, by writing the word "vexatious" in its order denying CSXT's motion, used language identical to the plaintiff-friendly standard governing intrastate transfer, *see* Pa.R.C.P. 1006(d)(1), which, in comparison to dismissal on the basis of *forum non conveniens*, requires the defendant to bear "a heavier burden." *Wright v. Consol. Rail. Corp.*, 215 A.3d 982, 992 (Pa. Super. 2019).

Under the intrastate transfer precepts, a defendant must establish that "a

- 5 -

plaintiff's chosen forum is oppressive and vexatious for the defendant." ***Id***. Conversely, the burden on a defendant in a *forum non conveniens* motion requires that party to present "weighty reasons" to overcome the plaintiff's forum choice by demonstrating that "there is a more convenient forum where the litigation could be conducted more easily, expeditiously, and inexpensively." ***Id***. (citation omitted). While proof of "weighty reasons" still requires a defendant to demonstrate why interstate transfer is legally appropriate, the corresponding burden of proof is lesser than that of motion seeking an intrastate transfer. ***See id***., at 992-93.

Irrefutably, the trial court included the word "vexatious" in its order denying CSXT's initial motion, wrote the words "oppression" and "oppressive" in its denial of CSXT's subsequent motion, and incorporated both sets of rationales into its Pennsylvania Rule of Appellate Procedure 1925(a) opinion. ***See*** Opinion, 12/14/20, at 2-3 (unpaginated). In the case of "vexatious," the court concluded that, in the context of the ongoing COVID-19 pandemic, it was equally burdensome to conduct remote litigation in both Pennsylvania and Maryland. In using the word "oppressive," the court found that CSXT did not demonstrate that Philadelphia would be excessively harmful to it having to defend itself there. By writing these words, CSXT contends that "the trial court improperly intermingled standards of heightened deference afforded to plaintiffs under Pa.R.C.P. 1006(d)(1) into this interstate transfer matter, [and resultantly] abus[ed] its discretion." ***Wright***, 215 A.3d at 992-993 (indicating, too, in ***Wright***, that a plaintiff's choice of filing an action in a foreign forum is not inherently deemed

reasonable or treated with the same level of reasonability as a plaintiff filing in his or her native forum).

While we are cognizant of the impact COVID-19 has had on Pennsylvania's court systems, there are obvious ambiguities in the court's analysis of CSXT's motion, at least insofar as the first order is concerned. In its order denying CSXT's motion to dismiss, the court determined that all discovery and trial depositions could be performed remotely. Therefore, as best can be discerned, the court found that remote accessibility made it immaterial as to where the actual action would be litigated. *See* Order Denying Defendant's Motion to Dismiss, 8/3/20, at 1 n.1 (unpaginated) (concluding that the remote manner of recording testimony means that witnesses can remain in "their home jurisdiction during discovery and trial").

The order denying CSXT's motion to amend is a little more explanative. There, the court "considered the relevant private and public interest factors," but denied its motion because CSXT "did not sustain its burden in proving that there were *any* substantially weighty issues to overcome [Green's] chosen forum." Order Denying Defendant's Motion to Amend, 10/2/20, at 1 n.1 (unpaginated) (emphasis in original) (stating further that Green "has alleged that some of his injury occurred while he was working at [CSXT] railroad while he worked *in Philadelphia*, and particularly where [Green] has submitted that his intended witnesses were not all from Maryland") (emphasis in original). Instead, while CSXT identified, via affidavit, that its witnesses were in Maryland, "there was no exact identification of where within Maryland the witnesses were located, nor why

it would be more oppressive or time consuming for those witnesses to travel to a trial in Philadelphia versus a location somewhere in Maryland." ***Id***. In short, the court ascertained that CSXT failed to meet its burden in demonstrating that "there were any substantially weighty issues to override [Green's] chosen forum." ***Id***. The court's 1925(a) opinion materially relies on its two prior orders and attendant explanations in those orders.

We conclude that, although the court could have been more precise in its verbiage, it ultimately evaluated CSXT's motion under the "weighty reasons" standard as espoused in, among other cases, ***Robbins***. ***See*** 212 A.3d at 87 (citation omitted). Of note, the court explicitly mentioned its review of the private and public interest factors existent in this matter. Then, it proceeded to identify several of those factors that it either found to be compelling in its determination or, conversely, that CSXT failed to prove. Accordingly, while we ultimately find that its denial of CSXT's motion to dismiss was an erroneous determination, we do not do so on the basis that the court committed an error of law in this domain.

In its second issue, CSXT avers that the court "effectively suspended consideration of the ***Plum*** factors[.]" Appellant's Brief, at 20. In ***Plum v. Tampax, Incorporated***, our Supreme Court adopted the various private and public factors illuminated by the United States Supreme Court in its consideration of *forum non conveniens* claims. ***See*** 160 A.2d 549, 553 (Pa. 1960). Specifically, courts are to contemplate:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of

- 8 -

premises, if view would be appropriate to the actions; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to a fair trial. * * *

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is appropriateness, too, in having the trial * * * in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Engstrom v. Bayer Corporation*, 855 A.2d 52, 56 (Pa. Super. 2004) (citation omitted) (alterations in original). However, when evaluating the various public and private considerations at play, "it is within the trial court's discretion to weigh some factors more heavily than others[.]" *Robbins*, 212 A.3d at 90.

Here, CSXT chiefly relies on the court's initial justification it provided when it denied CSXT's motion to dismiss, namely its reference to COVID-19's equal impact on the courts of Maryland and Pennsylvania. While we agree that "there is no support in the record for the trial court's [equally affected] belief" and further, no evidence as to how trials would proceed in Maryland versus Pennsylvania under COVID-19 conditions, *see* Appellant's Brief, at 20, we find that such a determination is peripheral, if not immaterial, in the context of both its larger analysis of the public and private factors and this Court's conclusion that

reversal is necessary.[2]

With that being said, the trial court relied on the COVID-19 pandemic as a basis to suggest that video technology made state residency immaterial for the collection of discovery and trial depositions. However, this Court has rejected "*sua sponte* suggestions on how to trim costs or work around other objections … [such as] the court's encouragement of increased use of video technology[.]" ***Hovatter***, 193 A.3d at 427. Although ***Hovatter*** was decided prior to COVID-19 and its impact on Pennsylvania's court systems, the thrust of the case remains viable. Simply put, to the extent the trial court was suggesting that the use of video recording technology would ameliorate potential problems with remote witnesses, reliance on these "workaround" methods is misplaced. Stated differently, overwhelming or exclusive reliance on "modern technology" to obviate the need for in-person elements of the trial continuum has been rejected as a justification to deny a motion to dismiss on *forum non conveniens* grounds. ***See Wright***, 215 A.3d at 996.

CSXT's third issue is interrelated to its second, but is ultimately the basis that we agree warrants reversal. CSXT contends that the court's evaluation of the private and public factors could have only led to one conclusion: dismissal.

_____

[2] Assuming, *arguendo*, that COVID-19 did have an equal impact on the court systems of Maryland and Pennsylvania, it would follow that, as Pennsylvania's court system was, at that juncture, still available to Green, Maryland's would have been, as well. Although Green does not contest the availability of Maryland as an alternate forum, this determination would imply that such a forum existed. ***See Robbins***, 212 A.3d at 87.

As has previously been stated, albeit in a slightly different context, our review for abuse of discretion requires this Court to ascertain whether "there is a more convenient forum where the litigation could be conducted more easily, expeditiously, and inexpensively." ***Hovatter***, 193 A.2d at 427.

CSXT suggests that the trial court heavily, if not exclusively, utilized two pieces of information not probative of this "easier forum" analysis. ***See*** Appellant's Brief, at 26.

First, CSXT states that the court's reliance on the suggestion that some of Green's injury occurred while he worked in Pennsylvania is misplaced, given that the location of an injury does not directly implicate any of the aforementioned private or public factors. We agree that, in isolation, the location of an injury does not inherently serve to demonstrate any one of the enumerated private or public factors. Instead, the location *may* be important if a site visit is necessary or if eyewitnesses to the causal or correlative events are located within that specified forum. ***See Engstrom, supra***.

Even assuming that some component of Green's alleged injury occurred in Pennsylvania, a location where he not only sparsely performed work in but also has not worked in over three decades, the notion that litigation could be conducted more easily in in this state is tenuous, at best. Any connection Green has with Pennsylvania is merely transitory and *de minimis*, with Maryland appearing to be the obvious and more convenient alternate forum.

More specifically, *none* of the fact witnesses (medical or otherwise) identified by either party reside in Pennsylvania. ***See e.g.***., Plaintiff's Answers to

Defendant's First Set of Interrogatories, 9/16/19, at 18, 20-21, 23-24; Affidavit of Michael J. Scully on Behalf of CSX Transportation, Inc., at 1. In addition, Green's work in Pennsylvania amounted to the smallest component of his time, compared to his workhours spent in Maryland, Virginia, and Washington, D.C.

Second, CSXT challenges the court's reliance on CSXT not deposing Green or other witnesses in a timely manner. The court concluded that CSXT should have sought depositions prior to the March 2020 COVID-19-related court closings and if CSXT was "unable to secure a necessary witness through court intervention, perhaps its burden would be met." Order Denying Defendant's Motion to Amend, 8/3/20, at 1 n.1 (unpaginated). Moreover, the court stated that CSXT's affidavit indicating that "its witnesses were in Maryland" was insufficient because it did not exactly identify the location of those witnesses nor why Philadelphia would be "more oppressive or time consuming" versus a location in Maryland for those witnesses. *Id*.

It is unclear what impact these findings had on the court's ultimate disposition. However, according to the record, CSXT attempted to depose Green in April 2020, prior to the filing of its motion to dismiss. *See* Motion for Extraordinary Relief, at 2 (undated and unpaginated). Instead of availing himself, Green "canceled that deposition due to the COVID-19 pandemic[.]" *Id*. Furthermore, as to the saliency of CSXT's affidavit, the record establishes that Green primarily worked in Maryland. When faced with allegations contained within affidavits, trial court are to exercise "common sense."

*Wright*, 215 A.3d at 993. As Maryland was the state of Green's chief worksite, CSXT's "assertion in its affidavit[] that most or all of its witnesses reside primarily, if not exclusively, in [Maryland] does not require additional record support." *Id*.

Aside from identifying the fact that he worked in Pennsylvania at times until 1987, Green, in response, relies on: (1) both sides already having access to his employment and medical records; (2) the locational proximity of the one Pennsylvania work site for jury-view purposes; and (3) "the majority of witnesses were identified by [Green]," as three private bases to affirm the trial court and, simultaneously, not to disturb his forum selection. Appellee's Brief, at 22-23. As to the public factors, Green states that "Philadelphia County has both the judicial resources and experience with FELA matters." *Id*., at 24.

While we give credence to the argument that some percentage of Green's purported injury may have occurred in Pennsylvania and that there is one observable worksite located within this state, every other aspect of this case militates a finding that CSXT presented "weighty reasons" in motioning for dismissal on *forum non conveniens* grounds and that litigation could be conducted much more easily in Maryland. As such, given the clear viability of Maryland as an alternate forum, it was an abuse of discretion to find to the contrary.

First, all of the witnesses with known addresses are located over 100 miles away from Philadelphia in the state of Maryland. Not only does that

three-digit distance raise questions regarding the availability of compulsory process on these out-of-state witnesses, but it also demonstrates that each of these witnesses would be, at a minimum, several hours away by vehicle should they need to appear for trial or other purposes in Philadelphia. Likewise, because no witnesses have been identified in Pennsylvania, there is no record support to establish a nexus between any Pennsylvania-based witnesses and Green's putative injury location in Pennsylvania.

Second, the possibility of viewing the Pennsylvania worksite must be viewed in the context of Green not having performed any work in Pennsylvania for over three decades and, more importantly, that his work in Pennsylvania comprised a very small fraction of his occupational time. Instead, the record indicates that he mostly worked in Maryland and to a lesser extent in Virginia and Washington, D.C. **See, e.g.**, Deposition of Clyde Green, 8/6/20, at 313.

Third, given that this case is between a Maryland resident and a Virginia corporation headquartered in Florida, that all of the witnesses are located in Maryland, and that Green has only a trivial connection to this state as a result of working here briefly, it strains credulity to find that a Philadelphia jury would have much, if any, relation to this litigation. Although a trial court is permitted to weigh some of the private and public factors more than others, it cannot depart from the undeniable conclusion that, based on the information of record, Maryland is the most apt forum for this case, as it would allow for this litigation to be conducted more easily, expeditiously, and inexpensively.

Accordingly, we reverse the order denying CSXT's motion to dismiss and remand with directions to the trial court to dismiss the underlying complaint without prejudice to refiling it, within the time limits previously stipulated, in a more appropriate court.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2021