Kim Gregory HUNTER, Appellee

v.

SHIRE US, INC., Appellant.

Superior Court of Pennsylvania.

Argued July 21, 2009.

Filed March 17, 2010.

Christopher J. Mulvaney, Cincinnati, OH, for appellant.

Charles L. Becker, Philadelphia, for appellee.

BEFORE: STEVENS, BOWES, and FITZGERALD,* JJ.

OPINION BY BOWES, J.:

¶ 1 Shire US, Inc. appeals from the February 14, 2008 order denying its request either to dismiss this action on the basis of 42 Pa.C.S. § 5322(e) or to transfer this action to Chester County, Pennsylvania, under Pa.R.Civ.P. 1006(d)(1). We affirm.

¶ 2 On March 5, 2007, Appellee, Kim Gregory Hunter, instituted this action in the Court of Common Pleas of Philadelphia County based upon the following allegations. In the days immediately preceding his January 6, 2005 heart attack, Appellee ingested Adderall, a prescription drug tested, promoted, manufactured, and distributed by Appellant. Appellant's corporate headquarters are located in Chester County, Pennsylvania. Appellee alleged that his heart attack was caused by Adderall and that Appellant failed to properly warn that the drug was known to be associated with an increased risk of heart attack. Appellee was a resident of Georgia, was prescribed Adderall in that state, and purchased and consumed the drug there. In his complaint, Appellee alleged that Appellant conducted business in Pennsylvania, including Philadelphia County.

¶ 3 On March 28, 2007, Appellant filed preliminary objections raising, *inter alia*, the defense of the statute of limitations and the position that venue was improper in Philadelphia County because the action should have been brought either in Georgia or in Chester County, Pennsylvania. On April 17, 2007, Appellee filed an amended complaint[1] alleging that he "did

* Former Justice specially assigned to the Superior Court.

1. In the amended complaint, Appellee's wife, Jo Gail Hunter, was added as a party plaintiff,

not know or could not have reasonably known that Adderall was responsible and/or related to his heart attack until early in 2006." Amended Complaint, 4/17/07, at ¶ 1. Appellant filed preliminary objections to the amended complaint and again raised the issue of improper venue.

¶ 4 Appellee responded to the preliminary objections, and Appellant moved for their disposition. In its brief in support of the preliminary objections, Appellant claimed that it did not conduct business in Philadelphia County sufficient to confer venue with respect to this action in that county. It averred that Appellee's complaint did not contain enough facts to establish that it regularly conducted business in Philadelphia County. The preliminary objections were overruled on June 29, 2007. Appellant's motion for reconsideration of the June 29, 2007 order was denied on July 13, 2007. Appellant petitioned this Court for interlocutory review of the June 29, 2007 order. That petition was denied on September 24, 2007.

¶ 5 Appellant answered the complaint, and on January 11, 2008, filed a motion to dismiss this action on the basis of *forum non conveniens* or, alternatively, to transfer venue. In that motion, Appellant sought dismissal of this case pursuant to 42 Pa.C.S. § 5322(e), asserting that Appellee had no connection to Pennsylvania. In its brief in support of the motion to dismiss, Appellant indicated that it would submit to jurisdiction in Georgia, would accept service in that state, and would stipulate that any applicable statute of limitations was tolled while this matter was pending in Philadelphia County. It sought either dismissal or the re-filing of this action under section 5322(e) because Appellee resided in Georgia, his medical care was administered there, and he was pre-scribed and ingested the drug in that state.

¶ 6 In its motion, "[i]n the alternative," Appellant sought "transfer" of this case to the Court of Common Pleas of Chester County pursuant to Pa.R.Civ.P. 1006(d)(1), for the convenience of the parties and witnesses. Motion, 1/11/08, at ¶ 10. Appellant maintained that Philadelphia County constituted a vexatious or oppressive forum for it. Following Appellee's response, the motion was denied by order entered February 14, 2008. After the court refused Appellant's request for certification for interlocutory review, we granted Appellant the right to interlocutory review. *See* Order of Superior Court, 5/20/08, at 1.

■ ¶ 7 We first review the propriety of the trial court's refusal to dismiss this action under § 5322(e), which states, "[w]hen a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just." Appellant maintains that this action should be re-filed in Georgia under this provision. It notes that Appellee's medication was prescribed and taken in Georgia and that he resides in that state. Appellant asserts that it would be burdensome to require it to travel to Georgia to depose Appellee's medical providers.

¶ 8 Appellee counters that the circumstances of his ingestion of Adderall and ensuing medical care are largely settled and that the central issue in this case does not involve his consumption of that drug. Appellee continues that this action primarily concerns Appellant's development, marketing, testing, and knowledge of the risks of heart attacks associated with its use. Appellee notes that Appellant marketed Adderall throughout the United States and

but on October 3, 2007, a praecipe was filed

withdrawing Ms. Hunter's name as plaintiff.

that its principal place of business is located in Pennsylvania. Appellee continues that it is undisputed that all of Appellant's employees who have been identified as possessing knowledge about the development, marketing, labeling and safety of Adderall are located in Pennsylvania. Furthermore, all documentation produced regarding Adderall was generated from Appellant's offices in Pennsylvania. Thus, the witnesses and documents pertinent to the central issue herein, Appellant's development and testing of its drug, are actually located in Pennsylvania.

¶ 9 The determination of whether "substantial justice" dictates a change of forum is within the discretion of the trial court; thus, our review of an order disposing of a motion to dismiss under § 5322(e) based upon *forum non conveniens* is subject to an abuse-of-discretion standard. *See Wright v. Aventis Pasteur, Inc.,* 905 A.2d 544 (Pa.Super.2006); *Engstrom v. Bayer Corp.,* 855 A.2d 52 (Pa.Super.2004). In light of the facts in question, we find *Wright* dispositive.[2] Therein, plaintiffs, who were residents of Texas, brought a products liability action on behalf of their son in Philadelphia, Pennsylvania. Their son had been diagnosed with severe neurological damage, which plaintiffs alleged was caused by his exposure to mercury contained in blood products and vaccines manufactured and sold by the defendants. The blood products and vaccines were administered in Texas.

¶ 10 The defendants in *Wright* moved for dismissal under 42 Pa.C.S. § 5322(e), alleging that Pennsylvania was an inconvenient forum in which to litigate the matter. Defendants agreed to consent to jurisdiction and service in Texas and to waive any defense premised upon expiration of the statute of limitations. The trial court granted that motion, and on appeal, we reversed.

¶ 11 We observed that the doctrine of *forum non conveniens* enacted at § 5322(e) permits re-filing or dismissal of an action brought in Pennsylvania only when substantial justice "strongly militates" that the action be heard in a different state. *Wright, supra* at 548. We noted that two factors are considered when a court determines whether to dismiss an action under that statutory provision. Initially, a plaintiff's decision about where to institute the action cannot be disturbed except for weighty reasons and secondly, an alternate forum must exist. In that case, Texas existed as an alternative forum in that the defendants had consented to jurisdiction, accepted service in that state, and waived the defense of the statute of limitations.

¶ 12 Thus, we considered whether there were weighty reasons sufficient to override the plaintiffs' choice to bring the action in Pennsylvania. We noted that in making the determination regarding the existence of weighty reasons, the court must consider the "private and public interest factors involved in the case." *Id.* We outlined:

> The private factors to be considered include:
>> the relative ease of access to sources of proof; availability of compulsory process for attendance for unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.
>
> With regard to the public factors a court must consider, this Court has recognized that[:]

**2.** Notably absent from Appellant's briefs is any reference to the *Wright* decision.

administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is an appropriateness, too, in having the trial ... in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* at 548 (citations and footnotes omitted) (quoting *D'Alterio v. New Jersey Transit Rail Operations, Inc.*, 845 A.2d 850, 852 (Pa.Super.2004)).

¶ 13 We conducted an examination of the private and public factors in that case. We noted that the crux of the litigation pertained to the decisions by the manufacturers, which decisions were made in the Philadelphia area, to use and market the substance that allegedly caused the injuries in question when they sold their vaccines and blood products. The defendants countered that since the medical care at issue was rendered in Texas and since Texas law would probably apply, the trial court's decision was correct.

¶ 14 After weighing the private and public factors, we concluded that the trial court had abused its discretion in dismissing the action under § 5322(e). We stated, "none of the appellees-defendants [has] corporate headquarters in Texas. Thus, there is no basis upon which to conclude that Texas would be a more convenient forum for appellees' corporate employee witnesses. In fact, Philadelphia County, with its proximity to the relevant corporate offices of four appellees-defendants, appears to be quite a convenient jurisdiction for the trial of the case." *Id.* at 551.

¶ 15 Turning to the "public factors," we observed that the suit involved the actions of pharmaceutical companies that marketed their products in Pennsylvania; in light of that fact, the conclusion that the citizens of this state had no interest in the action was unsubstantiated. We were unconvinced that the potential applicability of Texas law militated in favor of transfer to Texas, stating that there was "no basis upon which to conclude that the law determined to be applicable [was] beyond the ken of a Philadelphia trial judge." *Id.*

¶ 16 In the case at bar, Appellant raises the same arguments considered and rejected by this Court in *Wright*. There is no question that the central issue herein relates to Appellant's development, testing, and marketing of Adderall, and its knowledge of and warnings about the risks of heart attack from ingesting that drug. The events relating to these activities were conducted by Appellant's employees in Pennsylvania.

¶ 17 In *Wright*, we specifically distinguished the cases relied upon by Appellant herein. For example, Appellant claims that in *Engstrom v. Bayer Corp., supra*, "this Court dealt with a factual scenario virtually identical to the case at bar." Appellant's brief at 9. We disagree. As we noted in *Wright*:

In *Engstrom*, this Court was faced with several mass tort cases filed by out-of-state plaintiffs, who claimed to have suffered strokes after ingesting a cold tablet marketed by defendant, Bayer, containing PPA [a decongestant]. While Bayer had its corporate headquarters in Pennsylvania, the medication at issue was developed and produced outside of Pennsylvania, and "no documents or employees/prospective witnesses material to this litigation were located in Pennsylvania, except one former employee." *Engstrom, supra*, 855 A.2d at 54.

*Wright, supra* at 551–52 (footnote omitted). Thus, in *Engstrom,* in contrast to this case, the employees who were involved in the manufacture and testing of the drug in question were not located in Pennsylvania.

¶ 18 Appellant also relies upon our unpublished memorandum decision in *Arnelien v. SmithKline Beecham,* 895 A.2d 643 (Pa.Super.2006), arguing that it is a "virtually identical case." Appellant's brief at 10. Initially, we note that it is improper for Appellant to seek application of that case in the first instance. *Schaaf v. Kaufman,* 850 A.2d 655, 658 (Pa.Super.2004) (under 210 Pa.Code § 65.37, an "unpublished memorandum decision shall not be relied upon or cited" by a party). In addition, it is not binding on us. *Id.* Finally, we specifically distinguished *Arnelien* in *Wright.*

> In *Arnelien,* [a case involving the same decongestant that caused the stroke in *Engstrom* ], the plaintiff was a Canadian citizen who suffered a stroke after ingesting a cold tablet marketed by defendant, SmithKline Beecham. Significantly, the specific medication, purchased by the plaintiff and ingested in Canada, was marketed *only* in Canada, and was subject to Canadian regulatory laws. Moreover, the trial judge wrote a lengthy opinion, in which he emphasized the importance of the Canadian regulatory process, which was "specific to the marketing of medication in Canada and separate and distinct from United States regulatory requirements." *Arnelien [v. SmithKline Beecham],* supra, 2005 WL 850844 at *6 [ (Pa.Com.Pl.2005) ].

*Wright, supra* at 552 (emphasis in original; footnote omitted).

¶ 19 Given that there is no reasoned basis for distinguishing *Wright,* we are compelled to affirm the trial court's refusal to dismiss this action for re-filing in Georgia.

¶ 20 Appellant next complains about the trial court's refusal to transfer this case to Chester County under Pa. R.Civ.P. 1006(d)(1),[3] which states: "For the convenience of parties and witnesses the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought." This subsection of Rule 1006 embodies the doctrine of *forum non conveniens* as between counties in Pennsylvania.

> The standard governing our review of a trial court's decision on a transfer of venue based upon a claim of *forum non conveniens* is one of abuse of discretion. Such an abuse will be found when the trial court "misapplies the law or exercises [its] judgment in a manner that is manifestly unreasonable or the result of bias, prejudice or ill will." *Johnson v. Henkels & McCoy, Inc.,* 707 A.2d 237, 239 (Pa.Super.1997).

*Walls v. Phoenix Ins. Co.,* 979 A.2d 847, 850 n. 3 (Pa.Super.2009).

¶ 21 It is well-settled that a "plaintiff's choice of forum should rarely be disturbed by the grant of a Rule 1006(d)(1) petition." *Cheeseman v. Lethal Exterminator Inc.,* 549 Pa. 200, 701 A.2d 156, 162 (1997).

---

**3.** Even though Appellant did not raise *forum non conveniens* in its preliminary objections, the issue is not waived because while venue pursuant to Pa.R.Civ.P. 1006(b) must be raised by means of preliminary objections, *see* Pa.R.Civ.P. 1006(e), the issue of *forum non conveniens* under Pa. R.Civ.P. 1006(d)(1), can be raised by means of petition during the course of litigation and is not waived if not raised by preliminary objection. *See Zappala v. James Lewis Group,* 589 Pa. 516, 909 A.2d 1272 (2006); *Hosiery Corp. of America, Inc. v. Rich,* 327 Pa.Super. 472, 476 A.2d 50, 50 (1984).

A petition to transfer venue should not be granted unless the defendant meets its burden of demonstrating, **with detailed information on the record,** that the plaintiff's chosen forum is oppressive or vexatious to the defendant. Thus, the defendant may meet its burden of showing that the plaintiff's choice of forum is vexatious to him by establishing with facts on the record that the plaintiff's choice of forum was designed to harass the defendant, even at some inconvenience to the plaintiff himself. Alternatively, the defendant may meet his burden by establishing on the record that trial in the chosen forum is oppressive to him; for instance, that trial in another county would provide easier access to witnesses or other sources of proof, or to the ability to conduct a view of premises involved in the dispute. But, **we stress that the defendant must show more than that the chosen forum is merely inconvenient to him.**

*Walls, supra* at 851 (quoting *Cheeseman, supra* at 162) (emphases in original).

¶ 22 In the present case, Appellant did not, as astutely observed by Appellee, demonstrate with detailed averments in its petition and accompanying brief why the chosen forum was vexatious or burdensome to it. Therefore, the trial court was correct in refusing the transfer request. *See Zappala v. James Lewis Group,* 982 A.2d 512 (Pa.Super.2009) (transfer of venue on basis on *forum non conveniens* was unwarranted where there was no evidentiary basis to support a finding that the chosen forum was vexatious or burdensome to the defendant).

¶ 23 Indeed, Chester and Philadelphia Counties are adjacent to each other and are readily accessible in a short amount of travel time. *See Raymond v. Park Terrace Apartments, Inc.,* 882 A.2d 518, 521 (Pa.Super.2005) ("traveling from Delaware,

Bucks, Montgomery or Chester County to Philadelphia is not particularly onerous"); *accord Zappala, supra.* Hence, this case is not one of those rare ones where we are permitted to disturb Appellee's choice of forum.

¶ 24 Order affirmed.