## Untura v. Alcoa, Inc.

C.P. of Allegheny County, No. GD-10-001251

*Michael B. Leh* and *Joseph Satterley*, for plaintiff.
*Michael J.R. Schalk* and *Cathy Gordon*, for defendant.

WETTICK, *J.*, October 29, 2013—Alcoa's motion to dismiss this case under 42 Pa.C.S. § 5322(e) is the subject of this opinion and order of court. This section reads as follows:

> (e) Inconvenient forum.-When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just.

In determining whether a matter should be heard in another forum in the interest of substantial justice, a trial court must consider two important factors: (1) a plaintiff's choice of the place of the suit will not be disturbed except for weighty reasons, and (2) no action will be dismissed unless an alternative forum is available to the plaintiff. *Wright v. Aventis Pasteur, Inc.*, 905 A.2d 544, 547-48 (Pa. Super. 2006).[1]

---

1. The case law which applies the "oppressive and vexatious standard" set forth in *Cheeseman v. Lethal Exterminator, Inc.*, 701 A.2d 156 (Pa. 1997), applies only to intrastate forum challenges pursuant to

In deciding whether weighty reasons exist to overcome the plaintiff's choice of forum, recent Superior Court opinions, *Hunter v. Shire U.S., Inc.*, 992 A.2d 891, 894-95 (Pa. Super. 2010), and *Wright v. Aventis Pasteur, Inc.*, *supra*, require the trial court to consider the following private and public factors:

The private factors to be considered include:

the relative ease of access to sources of proof; availability of compulsory process for attendance for unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

With regard to the public factors a court must consider, this court has recognized that[:] administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is appropriateness, too, in having the trial... in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

This lawsuit is brought on behalf of the Estate of Dante Untura Filho ("decedent"). The decedent was a resident and a citizen of Brazil from the date of his birth on December 1, 1950 through the date of his death on February 5, 2010.

---

Pa.R.C.P. No. 1006(d)(1). *Id.* at 548, n.9.

The decedent was employed by Alcoa Aluminio, S.A. ("Aluminio") at a factory in Pocos de Caldas, Brazil, from approximately 1970 to 1987. He died from mesothelioma on February 5, 2010. His causes of action are based on allegations that as a result of his employment as a maintenance man, he worked directly and indirectly with and was directly and indirectly exposed, on a daily or almost daily basis, to various asbestos-containing products.

Alcoa, the only defendant, is a separate corporate entity from Aluminio, and it was a 60% owner of Aluminio. Plaintiff alleges that Alcoa, from its headquarters in Pittsburgh, controlled the safety and industrial hygiene practices (or lack thereof) of the factory where the decedent worked. Plaintiff further alleges that Alcoa obtained asbestos-containing products from Johns Manville Corporation and other manufacturers of asbestos-containing products in the United States and exported them to the factory where the decedent worked. Plaintiff also alleges that the disease which the decedent contracted was caused by his exposure to various asbestos-containing products which Alcoa furnished to Aluminio.

Plaintiff contends that the present case is governed by *Hunter v. Shire USA, Inc., supra,* and *Wright v. Aventis Pasteur, Inc., supra.* These cases involve injuries the plaintiffs sustained from taking drugs manufactured by the defendants.

In *Hunter*, the plaintiff was a resident of Georgia; he was prescribed the drugs in Georgia; he ingested the drugs in Georgia; and the heart attack occurred within Georgia. The lawsuit was filed in Pennsylvania.

The drug manufacturer requested dismissal pursuant to

42 Pa.C.S. § 5322(e), asserting that the plaintiff had no connection to Pennsylvania.

The Superior Court denied the request to dismiss because defendant's corporate headquarters were located in Philadelphia and the crux of the litigation pertained to decisions of the manufacturers, made in the Philadelphia area, to use and market the substance that allegedly caused the injuries in question. The Superior Court ruled that the lawsuit was properly filed in Pennsylvania because "there is no question that the central issue herein relates to appellant's development, testing, and marketing of Adderall, and its knowledge of and warnings about the risks of heart attack from ingesting that drug. The events relating to these activities were conducted by appellant's employees in Pennsylvania." *Id.* at 895.

The *Hunter* opinion relied on *Wright v. Aventis Pasteur, Inc.*, *supra*, which involved an identical fact situation, and a denial of a request to dismiss pursuant to 42 Pa.C.S. §5322(e).

*Hunter* and *Wright* do not cover the fact situation of the present case because in *Hunter* and *Wright* the crux of the litigation was not over whether the decedent ingested medicine manufactured by the defendant. The critical issues involved the properties of the drugs and the warning labels. The evidence as to these issues was at the manufacturers' headquarters in Philadelphia.

In the present case, on the other hand, exposure to asbestos-containing products allegedly provided by Alcoa is a central issue. In asbestos litigation, causation issues will focus on the decedent's daily activities and the frequency, regularity, and proximity to products containing asbestos allegedly supplied by Alcoa, the type of safety equipment,

if any, that was provided, whether the safety equipment was used, and the like. These are fact-specific issues that require the testimony of witnesses. This is particularly so where, as in this case, the employee died before his deposition could be taken and where the issue is whether the asbestos to which decedent was exposed was supplied by Alcoa.

The other central issue in this litigation concerns the manner in which Aluminio conducted its business. Did it, as Alcoa contends, have its own industrial hygiene program in Brazil, staffed by Brazilians seeking to comply with Brazilian law? Was Aluminio, as Alcoa contends, in charge of its own operations, including working conditions? Was Alcoa's role only to assist Aluminio in improving its occupational health practices, as it so contends? Do the records of Aluminio during the period of decedent's employment (1970-1987) show that it complied with Brazilian occupational health laws? What do the records of Aluminio show as to the sources of asbestos-containing products that Aluminio purchased?

The evidence described above is located in Brazil. Furthermore, in all likelihood, nearly all the witnesses will speak Portuguese as a first language, and the records, described above, in Aluminio's possession, custody, and control will probably be in Portuguese.

In discovery, plaintiff listed seven United States witnesses supposedly with knowledge about Alcoa's hygiene program. However, the first witness (the president of Aluminio during half the time decedent worked for the company) now lives in Brazil. Two of the other seven witnesses are deceased. None of the remaining four witnesses are current employees.

Through discovery, Alcoa has already produced documents within its possession, custody, and control related to the relationship between Alcoa and Aluminio on industrial hygiene issues. It has also answered interrogatories submitted by plaintiff relating to the use of asbestos at Aluminio and what decisions were made in Pittsburgh by Alcoa.

Alcoa has agreed that it is subject to the jurisdiction of the courts of Brazil and to supply all information, if it has not already done so, that would be available to plaintiff in litigation in this court.[2]

At pages 2 and 3 of plaintiff's brief, plaintiff contends that Allegheny County is the natural forum to litigate plaintiff's claims for the following reasons:

Alcoa, Inc. controlled its Brazilian subsidiary and the use of asbestos at the subsidiary's plant from Alcoa, Inc.'s headquarters in Pittsburgh, PA, and similarly controlled health and industrial hygiene procedures, if any, and management of the plant from Pittsburgh, PA;

Alcoa, Inc. possessed knowledge of the health hazards of asbestos in Allegheny County, controlled the subsidiary and the use of asbestos at the subsidiary's plant from Alcoa, Inc.'s headquarters in Pittsburgh, PA, and similarly controlled health and industrial hygiene procedures, if any, from Pittsburgh, PA;

Alcoa made decisions from Allegheny County to purchase asbestos products in the United States and export them to the Pocos de Caldas plant;

---

2. These promises may be enforced in this court if this lawsuit is stayed, rather than dismissed.

Alcoa, Inc. failed to warn or adequately warn plaintiff and intentionally exposed plaintiff to asbestos and caused his mesothelioma, and that those decisions were made from Allegheny County;....

Whether there are reasons to deny defendant's motion depends upon an examination of the private and public factors set forth at pages 1-2 of this opinion.

I initially consider "the relative ease of access to sources of proof."

For plaintiff to prevail in this litigation, plaintiff must establish exposure to asbestos in the workplace during the period of decedent's employment (1970-1987) and a causal connection between the exposure and decedent's illness. Since Mr. Filho died before his deposition was taken, findings of exposure (or the lack of exposure) will be based on the testimony of others employed at the same workplace between 1970 and 1987.

All witnesses, documents, and other evidence concerning exposure and causation are in Brazil. The first, and possibly only, language of most witnesses will be Portuguese. Since credibility will be an issue, live testimony is desirable. In addition, all medical records and other evidence regarding damages are in Brazil.

If exposure and causation are established, the next issue is whether the asbestos products on which the exposure claim is based were shipped by Alcoa, and received, and used by Aluminio. The records of Aluminio are the best source for establishing Aluminio's receipt of asbestos-containing products from Alcoa and the use of such products. Furthermore, employees and former employees of Aluminio are the best source of information with respect to plaintiff's claims that Alcoa controlled Aluminio.

Through discovery, Alcoa has already produced all records and answered all interrogatories concerning plaintiff's claims that Alcoa arranged for the shipment of asbestos-containing materials to Aluminio and assumed responsibility for the environmental policies of Aluminio. Any remaining records are likely to be in Brazil (i.e., records of Aluminio showing the sources of products containing asbestos used in places where the decedent worked).

In summary, the factor of relative ease to the sources of proof overwhelmingly favors Alcoa.

The second factor-the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses-also favors Alcoa. All of the witnesses in the exposure, causation, and damages phases of the litigation are in Brazil. The records of Aluminio are in Brazil. The witnesses who can answer questions regarding these records (Aluminio employees and former employees) are in Brazil. These same witnesses are also likely to be able to offer testimony regarding the relationship between Alcoa and Aluminio.

The third factor does not apply.

The fourth factor-all other practical problems that make trial of a case easy, expeditious, and inexpensive-favors Alcoa because (1) it would appear that the substantive law of Brazil will apply to this fact situation where a citizen and resident of Brazil was injured at a workplace in Brazil, (2) the first language of most of the witnesses will be Portuguese, and (3) most of the witnesses live in Brazil.

None of the public factors favor plaintiff.

The fact situation in this case is similar to that in *Auxer*

*v. Alcoa, Inc.*, 2010 WL 1337725 (W.D. Pa. 2010), *aff'd Auxer v. Alcoa, Inc.*, 406 Fed. Appx. 600 (3d Cir. 2011), in which the litigation was dismissed on the ground that Allegheny County was an inconvenient forum.

The *Auxer* litigation involved 244 plaintiffs (all Australian residents with one exception) who claimed to have suffered personal injuries caused by their exposure to emissions from three aluminum refineries in Western Australia. The refineries were owned and operated by Alcoa of Australia which is 60% owned by a subsidiary of Alcoa.[3]

The federal district court focused on the relative ease of access to sources of proof. All sources regarding where and to what the individual was exposed, duration of the exposure, injury, and impact on individual lifestyles were located in Australia.

The court stated that Alcoa would need access to non-party witnesses regarding the injuries, medical treatment, local climatic anomalies, refinery operations, environmental and public health regulations, and enforcement thereof. All sources of proof regarding these matters were in Australia. In response to the plaintiffs' argument that there were important witnesses and/or documents located in Pennsylvania, the court found that documentary evidence from a party was much more accessible than the evidence from Australian non-parties required by Alcoa to defend those actions.

The court also found that the other factors favored Alcoa.

_____

3. This court required Alcoa to submit to the jurisdiction of the Australian courts as a condition for dismissal.

The court of appeals affirmed; it found that the district court did the appropriate balancing and reached a conclusion well within the scope of its discretion.

## SUMMARY

Plaintiff has identified only five witnesses (all former employees of Alcoa) who may be in a position to offer testimony regarding the relationship and dealings between Alcoa and Aluminio during the period between 1970 and 1989. Three live in Western Pennsylvania, one lives in Texas, and the remaining witness lives in Brazil.

The four witnesses living in the United States can be deposed, pursuant to a court order, if they will not voluntarily appear. If the testimony of these witnesses is favorable to plaintiff, plaintiff will not be prejudiced by submitting the oral testimony through a deposition (which can be videotaped).

With respect to the first phase of the litigation (the asbestos phase of the litigation), Brazil is the source of all evidence. With respect to the second phase (Alcoa's alleged shipment of asbestos-containing products and control over Aluminio's industrial hygiene practices), and in light of Alcoa's document production and answers to interrogatories, the primary sources of evidence will be the testimony of witnesses in Brazil familiar with the operation of Aluminio during the period between 1970 and 1989 and the documents in the possession, custody, and control of Aluminio describing the relationship and dealings between Alcoa and Aluminio.[4]

For these reasons, I enter the following order of court:

---

4. Plaintiff never contends that there is no alternate forum available to plaintiff.

## ORDER OF COURT

On this 29 day of October, 2013, it is hereby ordered that this action is stayed pursuant to 42 Pa.C.S. § 5322(e).

It is further ordered that Alcoa, Inc. shall submit to the jurisdiction of the courts of Brazil, it shall not in litigation in Brazil raise any statute of limitation defenses to any lawsuit filed in the courts of Brazil within the next year, and it shall provide any discovery that it would have been required to furnish under the Pennsylvania rules of civil procedure.