J-A22021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BRUCE RHYNE AND JANICE RHYNE, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 432 EDA 2018 |
| UNITED STATES STEEL CORPORATION, SUNOCO, INC. (R&M) F/K/A SUN COMPANY, INC. AND F/K/A SUN OIL COMPANY, INC., RADIATOR SPECIALTY COMPANY, EXXON MOBILE CORPORATION, CHEVRON U.S.A., INC. AS SUCCESSOR IN INTEREST TO GULF OIL COMPANY, SAFETY-KLEEN SYSTEMS, INC., CRC INDUSTRIES, INC., UNIVAR USA, INC. F/K/A CHEMCENTRAL CORP. AND VAN WATERS & RODGERS, INC., ASHLAND, INC., KANO LABORATORIES, INC., THE STECO CORPORATION, ACUITY SPECIALTY PRODUCTS GROUP, INC., THE SAVOGRAN COMPANY, TURTLE-WAX, INC., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO MARVEL OIL COMPANY, INC. | : | |

Appeal from the Order Dated December 20, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  00228 January Term, 2016

BEFORE: BENDER, P.J.E., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED FEBRUARY 22, 2019**

_____

[*] Former Justice specially assigned to the Superior Court.

Appellants Bruce Rhyne (Rhyne) and Janice Rhyne appeal from the order granting the motion to dismiss without prejudice based on *forum non conveniens*, pursuant to 42 Pa.C.S. § 5322(e), filed by Appellees United States Steel Corp., Sunoco, Inc. (R&M), Radiator Specialty Co., Exxon Mobile Corp., Chevron U.S.A., Inc., Safety-Kleen Sys., Inc., CRC Indus. Inc., Univar USA, Inc., Ashland, Inc., Kano Lab., Inc., The Steco Corp., Acuity Specialty Prods. Grp., Inc., The Savogran Co., and Turtle Wax, Inc. Appellants contend the trial court erred by prematurely granting Appellees' motion. We affirm.

We adopt the facts and procedural history set forth in the trial court's opinion.

> [Appellants] are North Carolina Residents. [Appellant] Bruce Rhyne was employed by Duke Energy Corporation ("Duke") from 1976 to 2015 in various parts of North and South Carolina. During his employment at Duke, [Mr. Rhyne] alleges that he was exposed to a number of products containing the chemical Benzene. [Mr. Rhyne] further alleges that as a result of this exposure he contracted acute myeloid leukemia. . . .
>
> On January 5, 2016[, Appellants] filed a complaint against nineteen corporate defendants—[Appellees]—bringing claims of (1) negligence and gross negligence; (2) breach of warranty; (3) strict liability; (4) battery and fraud; and (5) loss of consortium.
>
> On June 21, 2017, [Appellee] Acuity Specialty Products Group, Inc. filed a motion to dismiss for *forum non conveniens*. On July 11, 2017, [Appellee] Safety-Kleen Systems, Inc. joined in [Appellee] Acuity Specialty Products Group, Inc.'s motion.

Trial Ct. Op., 4/16/18, at 1-2 (citations and some capitalization omitted).

On July 13, 2017, the trial court ordered that affidavits be submitted to opposing counsel within thirty days and depositions prompted by the received

affidavits must occur before September 15, 2017, the deadline for supplemental briefs:

> [A]ll counsel are ordered to submit supplemental briefs on the issue of venue by September 15th, 2017. . . .
>
> All parties are permitted to conduct discovery limited to the issue of venue, to include both affidavits and depositions as the parties deem necessary. All affidavits must be submitted to opposing counsel no later than thirty (30) days from the date of this Order. If the party receiving an affidavit wishes to depose the affiant on venue related issues, said deposition must occur between the date the affidavit is produced and the date briefs are due. Nothing in this Rule shall prevent the parties from taking venue-related depositions prior to the production of an affidavit. If the parties deem that discovery related to issues other than venue is necessary, they are granted leave to petition the court for permission to conduct such discovery.

Order, 7/17/17.

> The trial court discussed the subsequent events as follows:
>
> The parties timely responded. On September 19, 2017, [Appellees] ExxonMobil Corporation, Radiator Specialty Company, Chevron USA, Inc., CRC Industries, Inc., Univar USA Inc., and Kano Laboratories, Inc. joined the pending motion. On September 28, 2017, [Appellee] Turtle Wax, Inc. also joined in Acuity's pending motion to dismiss.[1] On December 19, 2017, this court granted [Acuity's] motion and dismissed the matter without prejudice to be filed in another jurisdiction.[2]
>
> On January 19, 2018, [Appellants] filed a motion for reconsideration of this court's December 19, 2017 order. Contemporaneously, [Appellants] filed an appeal to the Superior

---

[1] Appellants did not ask the trial court to delay its ruling on Appellees' motion due to purported outstanding discovery issues.

[2] Appellees had stipulated that they would consent to jurisdiction in North Carolina and that the filing date of the North Carolina complaint would be identical to the filing date of the Pennsylvania complaint.

Court . . . . On January 26, 2018, [Appellees] filed briefs in opposition to [Appellants'] motion for reconsideration arguing both that the trial court did not err in granting [Appellees'] motion to dismiss and that [Appellants] precluded this court from ruling on the motion for reconsideration by contemporaneously filing this appeal. On January 30, 2018, this court denied [Appellants'] motion for reconsideration and on February 7, 2018, [Appellants] appealed that decision. This second appeal was subsequently quashed on March 20, 2018.

Trial Ct. Op. at 1-2 (citations and some capitalization omitted).

Appellants timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellants raise the following issues, which we have reordered:

1) Did the [trial] court abuse its discretion by prematurely issuing its order granting a motion to dismiss under *forum non conveniens* where Appellants did not have a reasonable opportunity to present Safety-Kleen discovery that was relevant for *forum non conveniens* that had been ordered by the lower court, nor the opportunity to present a relevant key deposition?

2) Did the [trial] court abuse its discretion by granting a motion to dismiss to North Carolina under *forum non conveniens* where two cases in this Court, **Wright** and **Hunter**, govern this appeal, where the public factors weigh strongly in favor of retaining this case in Pennsylvania and Philadelphia County because, *inter alia*, the crux of the litigation pertains to decisions by manufacturers to use benzene in their products, more Defendants/Appellees are located here than in any other State, all Defendants/Appellees are alleged to conduct business here, over 50 witnesses are located in or near Philadelphia, and where the private factors do not strongly weigh in favor of dismissal?

Appellants' Brief at 3.[3]

_____

[3] We note that several of Appellees' briefs cited to non-precedential decisions of this Court, which violates 210 Pa. Code. § 65.37.

- 4 -

In support of their first issue, Appellants raise two arguments. First, Appellants argue that the trial court erred by not permitting them the opportunity to supplement their briefs in opposition to the motion to dismiss for *forum non conveniens*. *Id.* at 61. Appellants note that the court granted their motion to compel Appellee Safety-Kleen to produce documents on November 6, 2017. *Id.* According to Appellants, Safety-Kleen produced over 6,000 pages of documents on November 22, 2017. Appellants continue: "This was just 27 days before the [trial] court granted the motion to dismiss without prior warning on December 19, 2017. If [Appellants] had known they would have only 27 days, they could have put a rush on the review." *Id.* at 62 (citation omitted).

Second, Appellants assert that Mr. Rhyne's co-worker and purported sole eyewitness, Johnny Couch, had testified at his December 7, 2017 deposition that he was prepared to travel from North Carolina to Philadelphia to testify. *Id.* In Appellants' view, Couch's willingness to travel was a "relevant fact," but they did not receive Couch's deposition transcription until December 18, 2017, the day before the court granted Appellees' motion to dismiss. *Id.* at 62-63. Appellants reason that had they known the court was going to rule on the motion to dismiss on December 19, 2017, they could have expedited the transcription and filed it with the court before December 19th. *Id.* at 63.

Appellants acknowledge the trial court's contention that they waived the issue by failing to timely act. *Id.* Appellants counter by noting that the court's October 2, 2017 order permitted them to supplement their briefs-in-opposition with additional discovery. *Id.* In Appellants' view, the court should have acknowledged its October 2, 2017 order and, essentially, delayed ruling on the motion to dismiss. *Id.* at 63-64.

Pennsylvania Rule of Appellate Procedure 302 provides that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). A necessary corollary is that if a court is unaware of a particular issue, then it cannot act on it. Here, Appellants were aware that the trial court could have ruled on Appellees' motion to dismiss on any day after September 15, 2017. We agree with the trial court that if Appellants believed that the Safety-Kleen discovery or the Couch deposition would have assisted the court in ruling on Appellees' motion, then Appellants could have filed the appropriate motion to continue discovery. Appellants "never made such a request to" the court.[4] Because Appellants did not alert the trial court to such issues, they have waived them for appellate review. *See id.*; *see Takes v. Metropolitan Edison Co.*, 695 A.2d 397, 400 (Pa.

---

[4] Trial Ct. Op. at 8 (stating, Appellants "seem to contend that [the trial c]ourt should have been able to divine that [Appellants] needed additional time to review documents and that [Appellants] also wanted to provide this [c]ourt with additional information—even though [Appellants] never made such a request to this [c]ourt.").

1997) (stating that the "waiver rule prevents the trial from becoming a mere dress rehearsal and ensures trial counsel is prepared to litigate the case and create an adequate record for appellate review").

In support of their second issue, Appellants raise several arguments. Appellants contend that the trial court should have weighed the public and private factors in their favor. Appellants' Brief at 30. For example, in Appellants' view, Pennsylvania has the strongest connections to the suit because three of the corporate Appellees are incorporated in Pennsylvania. *Id.* Further, according to Appellants, numerous witnesses are in the greater Philadelphia area. *Id.* Appellants claim "[m]ost discovery is complete," they submitted expert reports, they opposed Appellees' motions for summary judgment, and that Pennsylvania law would govern this case under choice-of-law principles. *Id.* at 31. In support, Appellants rely on ***Hunter v. Shire US, Inc.***, 992 A.2d 891 (Pa. Super. 2010), and ***Wright v. Aventis Pasteur, Inc.***, 905 A.2d 544 (Pa. Super. 2006), which we summarize below.

"A trial court's decision to dismiss based on *forum non conveniens* will not be disturbed absent an abuse of discretion." ***Bochetto v. Dimeling, Schreiber & Park***, 151 A.3d 1072, 1079 (Pa. Super. 2016) (citation omitted).

> A trial court will have abused its discretion when in reaching its conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will. If there is any valid basis for the trial court's decision, the decision will not be disturbed.

*Id.* (quotation marks, brackets, and citations omitted). "A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion." ***Harman ex rel. Harman v. Borah***, 756 A.2d 1116, 1123 (Pa. 2000).

Section 5322(e) of the Judicial Code addresses a motion to dismiss based on interstate *forum non conveniens*:

> **(e) Inconvenient forum.—**When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just.

42 Pa.C.S. § 5322.[5]

> The two most important factors look to the court's retention of the case. They are (1) that since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed in any event unless an alternative forum is available to the plaintiff. Because of the second factor, the suit will be entertained, no matter how inappropriate the forum may be, if defendant cannot be subjected to jurisdiction in other states. The same will be true if plaintiff's cause of action would elsewhere be barred by

---

[5] The doctrine of *forum non conveniens* "provides the court with a means of looking beyond technical considerations such as jurisdiction and venue to determine whether litigation in the plaintiff's chosen forum would serve the interests of justice under the particular circumstances." ***Alford v. Phila. Coca-Cola Bottling Co.***, 531 A.2d 792, 794 (Pa. Super. 1987) (citing the extensive scholarly historical background of the doctrine in ***Westerby v. Johns-Manville Corp.***, 32 Pa. D. & C.3d 163, 165-71 (Phila. C.C.P. 1982)). The doctrine addresses the issue of plaintiffs bringing "suit in an inconvenient forum in the hope that they will secure easier or larger recoveries or so add to the costs of the defense that the defendant will take a default judgment or compromise for a larger sum." ***Norman v. Norfolk & W. Ry. Co.***, 323 A.2d 850, 854 (Pa. Super. 1974) (citing Restatement (Second) of Conflict of Laws § 84 cmt. a).

the statute of limitations, unless the court is willing to accept defendant's stipulation that he will not raise this defense in the second state.

***Plum v. Tampax, Inc.***, 160 A.2d 549, 560-61 (Pa. 1960) (citation omitted);

***accord Rini v. N.Y. Cent. R.R.***, 240 A.2d 372, 373-74 (Pa. 1968) (plurality)

(affirming dismissal of case brought, in part, by Ohio plaintiffs based on ***Plum***

factors).

With respect to the first factor, "a court may find that the presumption in favor of a plaintiff's choice of forum may be less stringently considered when the plaintiff has chosen a foreign forum to litigate his or her claims."

***Aerospace Fin. Leasing, Inc. v. New Hampshire Ins. Co.***, 696 A.2d 810, 814 (Pa. Super. 1997) (citing ***Piper Aircraft Co. v. Reyno***, 454 U.S. 235, 255 (1981)). "[W]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable." ***Id.*** (quoting ***Piper Aircraft***, 454 U.S. at 255).

As for the "weighty reasons" referenced in the first factor, the ***Bochetto*** Court noted as follows:

> To determine whether "weighty reasons" exist, a trial court must examine both the private and public factors announced by ***Gulf Oil Corp. v. Gilbert***, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947). The private factors [set forth by the Supreme Court] include:
>
>> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the

action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.

With respect to public factors, the Supreme Court advised:

Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is an appropriateness, too, in having the trial in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Bochetto*, 151 A.3d at 1079-80 (citations, brackets, and ellipses omitted).

With respect to practical considerations that make a case "easy, expeditious and inexpensive" to try, *Plum*, 160 A.2d at 553, the trial court considers whether discovery has been substantially complete and the state of pre-trial preparation. *See Wright*, 905 A.2d at 552; *D'Alterio v. N.J. Transit Rail Operations, Inc.*, 845 A.2d 850, 854 (Pa. Super. 2004). The fact of substantially complete discovery, however, may be outweighed by, among other things, the fact that such discovery could be used in the new forum. *See Jessop v. ACF Indus., LLC*, 859 A.2d 801, 805 (Pa. Super. 2004). The trial court may also consider the timing of the motion to dismiss. *See Beatrice Foods Co. v. Proctor & Schwartz, Inc.*, 455 A.2d 646, 650 (Pa. Super. 1982).

In *Wright*, the plaintiffs, Texas residents, sued multiple manufacturers of "various immune globulin products and vaccines" in Philadelphia. *Wright*, 905 A.2d at 546. It was uncontested that Texas was where the vaccine was administered. *Id.* As summarized by the *Hunter* Court:

The defendants in *Wright* moved for dismissal under 42 Pa.C.S. § 5322(e), alleging that Pennsylvania was an inconvenient forum in which to litigate the matter. Defendants agreed to consent to jurisdiction and service in Texas and to waive any defense premised upon expiration of the statute of limitations. The trial court granted that motion, and on appeal, we reversed.

*Hunter*, 992 A.2d at 894 (stating holding of *Wright*).

The *Hunter* Court summarized the rationale of the *Wright* Court as follows:

[The *Wright* Court] conducted an examination of the private and public factors in that case. [It] noted that the crux of the litigation pertained to the decisions by the manufacturers, which decisions were made in the Philadelphia area, to use and market the substance that allegedly caused the injuries in question when they sold their vaccines and blood products. The defendants countered that since the medical care at issue was rendered in Texas and since Texas law would probably apply, the trial court's decision was correct.

After weighing the private and public factors, we concluded that the trial court had abused its discretion in dismissing the action under § 5322(e). We stated, "none of the appellees-defendants [has] corporate headquarters in Texas. Thus, there is no basis upon which to conclude that Texas would be a more convenient forum for appellees' corporate employee witnesses. In fact, Philadelphia County, with its proximity to the relevant corporate offices of four appellees-defendants, appears to be quite a convenient jurisdiction for the trial of the case."

Turning to the "public factors," we observed that the suit involved the actions of pharmaceutical companies that marketed their products in Pennsylvania; in light of that fact, the conclusion that

- 11 -

the citizens of this state had no interest in the action was unsubstantiated. We were unconvinced that the potential applicability of Texas law militated in favor of transfer to Texas, stating that there was "no basis upon which to conclude that the law determined to be applicable [was] beyond the ken of a Philadelphia trial judge."

*Id.* at 896 (citations omitted and some brackets in original).

In **Hunter**, the plaintiff, a resident of Georgia, sued Shire US, Inc., a corporation with headquarters in Chester County, Pennsylvania. **Id.** at 892. Shire purportedly "promoted, manufactured, and distributed" a drug that injured the plaintiff, who had prescribed, purchased, and ingested it in Georgia. **Id.** Shire moved to, among other items, dismiss the suit under 42 Pa.C.S. § 5322(e), because the plaintiff, who resides in Georgia, was prescribed and took the drug in Georgia. **Id.** at 893. According to the **Hunter** Court, the plaintiff countered as follows:

that the circumstances of his ingestion of [the drug] and ensuing medical care are largely settled and that the central issue in this case does not involve his consumption of that drug. [The plaintiff] continues that this action primarily concerns [Shire's] development, marketing, testing, and knowledge of the risks of heart attacks associated with its use. [The plaintiff] notes that [Shire] marketed [the drug] throughout the United States and that its principal place of business is located in Pennsylvania. [The plaintiff] continues that it is undisputed that all of [Shire's] employees who have been identified as possessing knowledge about the development, marketing, labeling and safety of [the drug] are located in Pennsylvania. Furthermore, all documentation produced regarding [the drug] was generated from [Shire's] offices in Pennsylvania. Thus, the witnesses and documents pertinent to the central issue herein, [Shire's] development and testing of its drug, are actually located in Pennsylvania.

*Id.* at 893-94.

The **Hunter** Court noted that Shire raised the exact same arguments raised and rejected by the **Wright** Court:

> In the case at bar, [Shire] raises the same arguments considered and rejected by this Court in **Wright**. There is no question that the central issue herein relates to [Shire's] development, testing, and marketing of [the drug], and its knowledge of and warnings about the risks of heart attack from ingesting that drug. The events relating to these activities were conducted by [Shire's] employees in Pennsylvania.

**Id.** Accordingly, the **Hunter** Court affirmed the court's order denying Shire's motion to dismiss. **Id.** at 892.

Here, the trial court weighed the private and public factors and found the factors weighed in Appellees' favor. **See** Trial Ct. Op. at 3-7.[6] Appellants have argued that the facts of this case are more aligned with the facts in **Hunter** and **Wright**, as summarized above, and therefore, the court abused its discretion. Any such similarities, however, do not compel the conclusion that the court abused its discretion. **See Bochetto**, 151 A.3d at 1079.[7] It was within the court's discretion to weigh some factors more heavily than others. **See id.** That this Court may have weighed the factors differently and

---

[6] We note that although the trial court initially stated that "few of the relevant sources of proof are located in **Philadelphia**," **see** Trial Ct. Op. at 5, the court appropriately addressed the existence of sources of proof in **Pennsylvania**. **See id.** at 5-6.

[7] For example, in **Hunter** and **Wright**, it was largely unchallenged as to when and where the victim ingested the drug at issue, unlike here, in which Appellees challenge when and where Mr. Rhyne was purportedly exposed to benzene. **See** Trial Ct. Op. at 1 (noting that Mr. Rhyne alleged exposure to benzene between 1976 and 2015 in North and South Carolina).

- 13 -

arrived at a different result, does not mean the trial court abused its discretion. *See Harman*, 756 A.2d at 1123. Because Appellants have not met their burden, we affirm.

Order affirmed. The Savogran Company's Application for Admission *Pro Hac Vice* is granted.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/19

**IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRUCE RHYNE and JANICE RHYNE, h/w | : | January Term, 2016 |
| *Plaintiffs* | : | No. 160100228 |
| | : | |
| v. | : | 432 EDA 2018 |
| | : | |
| UNITED STATES STEEL CORPORATION, et al. | : | |
| *Defendants* | : |  |

## OPINION

### A. FACTUAL BACKGROUND

Plaintiffs Bruce and Janice Rhyne are North Carolina Residents. Pls. Compl. ¶ 3. Plaintiff Bruce Rhyne was employed by Duke Energy Corporation ("Duke") from 1976 to 2015 in various parts of North and South Carolina. *Id.* at ¶ 4. During his employment at Duke, Plaintiff alleges that he was exposed to a number of products containing the chemical Benzene. *Id.* at ¶¶ 5, 6. Plaintiff further alleges that as a result of this exposure he contracted Acute Myeloid Leukemia. *Id.* at ¶ 7.

### B. PROCEDURAL BACKGROUND

On January 5, 2016 Plaintiffs filed a Complaint against nineteen corporate defendants—Kendall Refining Company; Univar USA, Inc.; Ashland, Inc.; Kano Laboratories, Inc.; Hunt Oil Company; Witco Corporation; Chemtura Corporation; Hunt Refining Company; Steco Corporation; Acuity Specialty Products Group, Inc.; Savogran Company; Turtle Wax, Inc.; Sunoco, Inc.; United States Steel Corporation; Radiator Specialty Company; Exxonmobil Corporation; Chevron U.S.A., Inc.; Safety-Kleen Systems, Inc.; CRC Industries, Inc.—bringing claims of (1) negligence and gross negligence; (2) breach of warranty; (3) strict liability; (4) battery and fraud; and (5) loss of consortium. Pls. Compl. ¶¶ 11-78.

Rhyne Etal Vs United States Steel Corporat-OPFLD

16010022800545

On June 21, 2017, Defendant Acuity Specialty Products Group, Inc. filed a Motion to Dismiss for *Forum Non Conveniens*. On July 11, 2017 Defendant Safety-Kleen Systems, Inc. joined in Defendant Acuity Specialty Products Group, Inc.'s Motion. On July 13, 2017 this Court ordered the parties to submit supplemental briefing on the issue of venue by September 15, 2017. The parties timely responded. On September 19, 2017 Defendants ExxonMobil Corporation, Radiator Specialty Company, Chevron USA, Inc. CRC Industries, Inc., Univar USA Inc., and Kano Laboratories, Inc. joined the pending Motion. On September 28, 2017 Defendant Turtle Wax, Inc. also joined in Acuity's pending Motion to Dismiss. On December 19, 2017 this Court granted Defendant's Motion and dismissed the matter without prejudice to be filed in another jurisdiction.

On January 19, 2018 Plaintiffs filed a Motion for Reconsideration of this Court's December 19, 2017 Order. Contemporaneously, Plaintiffs filed an Appeal to the Superior Court, which is the subject of this opinion. On January 26, 2018 Defendants filed briefs in Opposition to Plaintiffs' Motion for Reconsideration arguing both that the trial court did not err in granting Defendants' Motion to Dismiss and that Plaintiff precluded this Court from ruling on the Motion for Reconsideration by contemporaneously filing this appeal. On January 30, 2018 this Court denied Plaintiffs' Motion for Reconsideration and on February 7, 2018 Plaintiffs appealed that decision. This second appeal was subsequently quashed on March 20, 2018.

On February 22, 2018 this Court ordered Plaintiffs to submit a Statement of Errors Complained of on Appeal. Plaintiffs timely filed said Statement and stated that this Court erred in granting Defendants' Motion because Defendants failed to demonstrate weighty reasons to justify dismissal. Plaintiff also stated that this Court erred in granting Defendant's Motion because this Court granted the Motion prematurely.

## C. DISCUSSION

### a. Standard of Review

On appeal a trial court's decision to dismiss pursuant for *forum non coveniens* is reversible only if the trial court has abused its discretion. *See, e.g.,* Bochetto v. Dimeling, Schreiber & Park (*Bochetto II*), 151 A.3d 1072, 1079 (Pa. Super. Ct. 2016); Pisieczko v. Children's Hospital of Philadelphia, 73 A.3d 1260, 1262 (Pa. Super. Ct. 2013). An abuse of discretion will be found when the trial court misapplies the law or exercises its judgment in a manner that is manifestly unreasonable or the result of bias, prejudice, or ill will. *Pisieczko,* 73 A.3d at 1262 (quoting Hunter v. Shire US, Inc., 992 A.2d 891. 896 (Pa. Super. Ct. 2010)). If there is any basis for the trial court's decision, the decision must stand. *Pisieczko,* 73 A.3d at 1262 (quoting Engstrom v. Bayer Corporation, 855 A.2d 52, 55 (Pa. Super. Ct. 2004)).

### b. Pennsylvania is Not a Proper Forum for this Action Because an Alternative Forum Exists and Weighty Reasons Exist to Disturb Plaintiff's Choice of Forum.

Pennsylvania law states that when a court finds "in the interest of substantial justice, the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just." PA. C.S. § 5322(e). This statute effectively codifies the common law doctrine of *forum non conveniens. See id.*; *Bochetto,* 151 A.3d at 1079. A court considering a Motion to Dismiss pursuant to the doctrine of *forum non conveniens* must apply a two part analysis. *Bochetto,* 151 A.3d 1079; Jessop v. ACF Indus., LLC, 859 A.2d 801, 803 (Pa. Super. Ct. 2004); *see also* Black v. CSX Transp., Inc., 2014 WL 10803040 (in a more recent, but non-binding decision Pennsylvania Superior Court stating the same). First, as a threshold matter a court must ensure that there is an alternative forum available to the plaintiff. *Bochetto,* 151 A.3d at 1079; *Jessop,* 859 A.2d at 803. Second, a court must determine whether weighty reasons

exist to disturb Plaintiff's choice of forum. *Bochetto II*, 151 A.3d at 1079; *Jessop*, 859 A.2d at 803.

### 1. An Alternative Forum Exists

Finding an available alternative forum is a threshold question; if there is an available forum, the issue progresses to the second part of the *forum non conveniens* analysis. *Pisieczko*, 73 A.3d at 1263. The relevant consideration as to this threshold question is whether the statute of limitations has expired and whether Defendant will submit to service in the new matter. *See e.g. Plum*, 160 A.2d at 553; *Jessop*, 859 A.2d at 803. This standard is so stringent that the state of Pennsylvania *will* hear a case—even where the forum is inappropriate—if there is no alternative forum available. *Plum*, 160 A.2d at 553; D'Alterio v. New Jersey Transit Rail Operations, Inc., 845 A.2d 850, 852 (Pa. Super. 2004). In the instant case Defendants have agreed not to contest specific jurisdiction in North Carolina and to use the date of filing in Philadelphia for statute of limitations purposes. As such, this satisfies the threshold question of an alternative forum exists. *See Plum*, 160 A.2d at 553; *Jessop*, 859 A.2d at 803.

### 2. Weighty Reasons Exist to Disturb Plaintiff's Choice of Forum

As to the second step of the analysis—weighty reasons—Pennsylvania courts have held that both public and private factors must be examined. *Bochetto*, 151 A.3d at 1079-80 (citing *Gulf Oil Co. v. Gilbert*, 330 U.S. 501 (1947)). Private factors to consider are the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling, cost of obtaining attendance of willing witnesses, possibility to view the premises where the incident occurred, and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Bochetto*, 151 A.3d at 1079-80; *Wright v. Aventis Pasteur*, 905 A.2d 544, 548 (2006); *Jessop*, 859 A.2d at 803. The public factors to consider are congestion of courts, whether

the surrounding community should be burdened with jury duty when they have no relation to the litigation, and conflicts of law considerations. *Bochetto*, 151 A.3d at 1079-80; *Wright*, 905 A.2d at 548; *Jessop*, 859 A.2d at 803.

Looking first to the private factors in the present case, this Court finds that the private factors weigh against Philadelphia as an appropriate forum because few of the relevant sources of proof are located in Philadelphia. *See Jessop*, 859 A.2d at 804 (affirming the decision of a trial court to dismiss an action pursuant to the doctrine of *forum non conveniens* where plaintiffs were not residents of Pennsylvania, Plaintiff's entire work history which gave rise to the litigation occurred outside of Pennsylvania, and Plaintiff received all medical treatment outside of Pennsylvania); Cinousis v. Hechinger Dept. Store, 584 A.2d 731, 733 (Pa. Super. Ct. 1991) (affirming the decision of a trial court to dismiss an action pursuant to the doctrine of *forum non conveniens* where plaintiffs were not residents of Pennsylvania, the events giving rise to the claim occurred outside of Pennsylvania, and medical records and known witnesses resided outside of Pennsylvania). Virtually all of Plaintiff's exposure to Benzene occurred in North and South Carolina. All of Plaintiff's medical care also occurred in North and South Carolina. The majority of the fact witnesses also live in North and South Carolina. Plaintiff himself has actually only ever been to Pennsylvania once, four or five years ago. Rhyne Dep. At 13. While this court does acknowledge that there are some sources of proof that *do* exist in the Commonwealth of Pennsylvania—limited to documents that may be in the possession of only three, out of nineteen total, defendants—the potential existence of these documents simply does not change this court's calculation that the private factors weigh in favor of dismissal. *See Wright*, 905 A.2d at 549 (holding that the private factors weighed against dismissal where more than half of the corporate

defendants maintained documents, conducted relevant clinical trials, and manufactured the vaccines giving rise to the lawsuit in the Commonwealth of Pennsylvania).

Turning then to the public factors, the public factors weigh against Philadelphia as an appropriate forum because of the litigation's limited connection to Philadelphia as well as the existence of conflict of laws concerns. *See Bochetto*, 151 A.3d at 1086, 1088; *Engstrom*, 855 A.2d at 56-57; *Cinousis*, 594 A.2d at 733. In this regard, only three of the nineteen corporate defendants have any connection to Pennsylvania and in fact only one of the Defendants, Sunoco, maintains a corporate office—notably not its principle place of business—in Philadelphia. This limited connection is too attenuated to require the citizens of Philadelphia to endure jury duty or to be burdened with the costs of trying this case. *See Jessop*, 859 A.2d at 547 (holding that when entirety of the occurrence giving rise to the litigation took place outside of Philadelphia and no parties reside in Philadelphia, the people of Philadelphia County should not be burdened with jury duty or the cost of litigation). Further, Philadelphia courts are already significantly burdened with litigation and as such, the congestion of this court system suggests that transfer is appropriate. *Bochetto*, 151 A.3d at 1079-80; *Wright*, 905 A.2d at 548; *Cinousis*, 594 A.2d at 733. At the same time, there are significant conflict of laws considerations. *Bochetto*, 151 A.3d 1086 (noting that the existence of a conflict of laws issue necessitating analysis is burdensome to a trial court); Engstrom v. Bayer Corp., 855 A.2d 52, 57 (Pa. Super Ct. 2004) (noting that allowing cases to go forward in Philadelphia would create "needless legal complexity" where the case raised a conflict of laws issue). Here, where all of plaintiff's exposure to benzene containing products occurred in North and South Carolina and manufacture and marketing of such products occurred throughout the country the law that will apply to Plaintiffs' claims is not obvious. Therefore, should trial go forward in Philadelphia, the trial court would need to engage in an

analysis as to what law is applicable to the instant case. *See Bochetto*, 151 A.3d at 1086 (noting that a trial court deciding a motion to dismiss for *forum non conveniens* does not need to decide which law applies, but that it is enough to recognize the existence of a conflict of laws issue).

### c. *This Court's Decision Was Not Premature.*

Plaintiff further argues that this Court's ruling on Defendants' Motion to Dismiss was premature because this Court ruled on Defendants' Motion before Plaintiff had an opportunity to review certain documents from Defendant Safety-Kleen Systems, Inc. that Plaintiff obtained pursuant to an Order from this Court. Plaintiff, though, through his own inaction has waived this claim. Nearly three months passed from the time the supplemental briefing was due until the time that this Court decided Defendants' Motion to Dismiss. Never once during that period did Plaintiff ever ask this Court for more time to respond, let alone even inform this Court that Plaintiff intended to file an additional response. In fact, even now in Plaintiff's own 1925(b) Statement, said Statement is devoid of any expression of an intent to file an additional response to Defendants' Motion to Dismiss. Notably too, also absent from said Statement is any allegation of prejudice to Plaintiff.

Moreover, looking to the procedural history of this case alone, the timeline of this Motion reveals that Plaintiffs' claims of prematurity are wholly and completely without merit. On July 13, 2017 this Court ordered the parties to conduct discovery related to the issue of venue and submit supplemental briefing. Said supplemental briefing was due on September 15, 2017 and the parties timely responded. It was not until three months later, on December 19, 2017, that this Court even ruled on Defendants' Motion. At no time during the pendency of this Motion did Plaintiffs ever file a Motion for Extraordinary Relief related to Defendants' Motion to Dismiss.

In spite of the fact that the timeline detailed above demonstrates that this Court's ruling was *not* premature, Plaintiffs seem to contend that this Court should have been able to divine that Plaintiffs needed additional time to review documents and that Plaintiffs also wanted to provide this Court with additional information—even though Plaintiffs never made such a request to this Court. While such intuition could certainly be helpful to this Court, it is currently outside the scope of this Court's capabilities. As such, absent a Motion for Extraordinary Relief or the actual submission of additional briefing this Court cannot simply let Motions languish because it speculates that the parties may need additional time.

## CONCLUSION

For the foregoing reasons, the decision of this Court should be affirmed.

**BY THE COURT**:

_____
DENIS P. COHEN, J.

Dated: April 13, 2018